Filed 7/14/14  P. v. Jackson CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B251277 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA057797) |
| v. | |
| ROBERT JACKSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kathleen Blanchard and Charles A. Chung, Judges.  Affirmed.

Hancock and Spears, Alan E. Spears, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael R. Johnsen and Susan Sullivan Pithey, Supervising Deputy Attorneys General, Mary Sanchez, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant and appellant Robert Jackson was convicted of possession of marijuana for sale. (Health & Saf. Code, § 11359.) The trial court sentenced defendant to two years in county jail. On appeal, defendant contends that the trial court erred in denying his motion to suppress evidence, insufficient evidence supports his conviction for possession of marijuana for sale, and the trial court erred when it refused to instruct the jury that qualified patients under the Compassionate Use Act of 1996 (Health & Saf. Code, § 11362.5) may possess up to eight ounces of marijuana. Defendant also asks that we independently review the sealed reporter's transcript of, and the personnel records the trial court reviewed in, an in camera hearing pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*). We affirm.

## BACKGROUND

About 9:00 p.m. on October 27, 2012, Los Angeles County Sheriff's Department Deputies Lohnnie Day and Diane Mekdara were on patrol in Palmdale. The deputies noticed a car with what appeared to be expired tags. The deputies determined that the car's registration was not current, which was a traffic violation. The deputies initiated a traffic stop. Defendant, who was driving the car, pulled over. As the deputies approached the car, Deputy Day smelled the odor of marijuana coming from the car.

Upon Deputy Mekdara's request, defendant got out of the car. Based on the smell of marijuana coming from defendant's car, Deputy Mekdara conducted a "pat down" search of defendant for weapons. As part of that search, Deputy Mekdara asked defendant if he had anything sharp—anything that would poke or stab—in his pockets. Defendant replied that he had marijuana in his pocket and "a recommendation for it." He said that his "recommendation" was in the car. Deputy Day testified that during the pat down search, Deputy Mekdara felt something in defendant's pocket and asked what it was. Defendant responded, "It's my weed. I have a recommendation." Deputy Day understood the term "recommendation" to refer to a doctor prescribed medical marijuana card that would allow defendant to purchase marijuana to treat a medical condition.

2

Deputy Mekdara asked defendant where "it" was located. Defendant responded that "it" was in his right pocket.

Deputy Mekdara removed four plastic bags that contained a substance that appeared to be marijuana from defendant's pocket—one larger and three smaller bags. The contents of the larger plastic bag were weighed and tested and found to consist of 12.53 grams of plant material that contained marijuana. The three smaller bags were weighed and found to have a combined gross weight of 5.24 grams. The deputies searched defendant's car and did not find a "recommendation." A search of defendant's wallet disclosed that he had $161, consisting of three $20 bills, three $10 bills, twelve $5 bills, and eleven $1 bills. Defendant denied that he sold marijuana or that the money came from marijuana sales.

Deputy Day advised defendant of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436. Defendant stated that he understood his rights. Deputy Day then questioned defendant. Defendant said that he purchased between $20 and $40 of marijuana a day for his personal use. Deputy Day asked defendant about the nature of his employment. Defendant said that he was unemployed. Deputy Day asked defendant how he purchased marijuana. Defendant responded that he received about $220 a month in aid from the State.

Because $220 would not allow defendant to spend $20 to $40 a day on marijuana, Deputy Day asked defendant how he bought marijuana once he spent the $220 in aid money. Defendant said, "I got to do what I got to do. Sometimes I sling a sack to the homies real quick to keep me goin'." Based on his experience, Deputy Day testified that defendant meant he sold marijuana to his friends.

Deputy Day asked defendant when he last smoked or ingested marijuana. Defendant responded that he had smoked or ingested marijuana that morning—11 hours earlier. Defendant did not appear to be under the influence of a narcotic, and the deputies did not find drug paraphernalia—wrapping papers or a pipe. Deputy Day arrested defendant.

In November 2009, Los Angeles County Sheriff's Department Deputy Steven Crosby was patrolling an area plagued with narcotics sales. Deputy Crosby and his partner approached a group of men, including defendant. The men ran when they saw the deputies' patrol car. As defendant ran, he threw an object. Eight baggies of marijuana of similar size or weight and a box of baggies were recovered from the area where defendant threw the object. Deputy Crosby recovered $111 from defendant, consisting of small denomination bills. Deputy Crosby's partner asked defendant if he was selling marijuana. Defendant responded, "Man, I got a weed card. Why would I be selling it?" The parties stipulated that on December 30, 2009, defendant pleaded guilty to possession of marijuana for sale (Health & Saf. Code, § 11359).

Deputy Sheriff Israel Gonzalez testified as the prosecution's expert on marijuana sales. Deputy Gonzalez testified that lower street level dealers typically sold bags of marijuana for $5 or $10. In the Palmdale and Lancaster area, $10 purchased one gram or less of low grade marijuana. There are about 28 grams in an ounce. The prosecutor gave Deputy Gonzalez a hypothetical set of facts based on the evidence in this case. Based on those facts, Deputy Gonzalez testified that the marijuana recovered in the hypothetical facts was possessed for sale.

In his defense, defendant introduced a document that purported to be a physician's statement and recommendation for defendant to use medical marijuana. Defendant did not present other evidence.

## DISCUSSION

### I.      Defendant's Motion to Suppress Evidence

Defendant contends that the trial court erred in denying his motion to suppress evidence under section Penal Code section 1538.5 because the smell of marijuana

emanating from a vehicle does not establish probable cause to believe the driver is armed and dangerous.[1]  The trial court did not err.

## A.     *Background*

Following Deputy Day's testimony, the trial court stated that defense counsel, in chambers, had indicated that he was contemplating filing a motion to suppress evidence and the trial court had given its "indicated" ruling.  The trial court stated that defense counsel expressed his "comfort" with the trial court stating its "indicated" ruling on the record without defense counsel having to file a formal suppression motion.  The trial court asked the parties if they agreed that the trial court could rule on the suppression motion based on the following assumed facts:

"[T]here was a traffic stop.  That he [Deputy Day] smelled the marijuana.  Based on the fact that the deputy smelled the marijuana the defendant was pulled out for a narcotics investigation.  [¶]  In the course of that investigation he was patted down and a plastic bag full of marijuana was recovered.  In fact, four bags were recovered.  [¶]  And I don't know that it came out during the actual testimony but part of what the attorneys wanted me to consider is as he was being patted down, Deputy Day's partner asked what it was and the—it referred to what she felt.  It seemed to feel like a baggie, to which the defendant responded that it was his weed and that he had a doctor's recommendation for it.  [¶]  The marijuana was then recovered and the defendant stated it was his prescribed marijuana.  [¶]  In sum and substance that's what the deputy testified to.  Whatever little subtleties I added was what was presented to me in chambers."  The parties agreed that the trial court could rule on the suppression motion based on the stated facts.

The trial court denied the suppression motion, stating as follows:

"There was a lawful traffic stop based on expired tags.  When the deputies approached and smelled marijuana, they had probable cause to—or I'm sorry—they had reasonable suspicion at the very least.  They also had reasonable suspicion but at the very

---

[1]     Although not expressly stated by defendant in the trial court, we assume defendant's motion to suppress concerned the marijuana recovered from his person.

least they had reasonable suspicion to conduct a preliminary investigation. They are authorized to pull the defendant out of the car with or without reasonable suspicion. As soon as he is pulled over for a traffic stop, they can pull him out for officer safety reasons.

"In either case there was reasonable suspicion here. When they pulled him out, they had articulable suspicion that criminal activity was afoot. Based on *Terry*[2] they conducted a patdown search. As soon as the deputy felt the plastic bag, for officer safety she was allowed to ask—or he or she was allowed to ask what it was. For all they knew there was perhaps ingestion materials. I understand that marijuana is not normally ingested with hypodermic needles but drug users do carry hypodermic needles.

"On top of that, for safety issues that question was a question that was designed to confirm or disspell [*sic*] criminal activity. This is akin to *Berkmer*,[3] B-E-R-K-M-E-R, where officers are allowed to pull a D.U.I. suspect over and ask questions such as, have you had drinks, when did you have those drinks. They then recover the marijuana.

"At every stage there was a valid basis for continuing their search, so the motion to suppress is denied."

### B. Standard of Review

"The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citations.]" (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

---

**2**    Apparently *Terry v. Ohio* (1968) 392 U.S. 1.

**3**    Apparently *Berkemer v. McCarty* (1984) 468 U.S. 420.

*C.    Application of Relevant Principles*

The United States Supreme Court "has recognized that traffic stops are 'especially fraught with danger to police officers.'" (*Arizona v. Johnson* (2009) 555 U.S. 323, 330.) "'The judiciary should not lightly second-guess a police officer's decision to perform a patdown search for officer safety.  The lives and safety of police officers weigh heavily in the balance of competing Fourth Amendment considerations.  [Citations.]'  [Citation.]  The Fourth Amendment has never been interpreted to '"require that police officers take unnecessary risks in the performance of their duties."  [Citation.]'  [Citation.]" (*People v. Collier* (2008) 166 Cal.App.4th 1374, 1378.)

"In the context of an ordinary traffic stop, an officer may not pat down a driver and passengers absent a  reasonable suspicion they may be armed and dangerous.  [Citation.]" (*People v. Collier, supra,* 166 Cal.App.4th at p. 1377.)  A traffic stop is not "ordinary" when an officer smells marijuana emanating from the stopped vehicle.  (*Ibid.*)  Although the smell of marijuana emanating from a vehicle does not provide an officer with probable cause to arrest persons in the vehicle for a drug offense, it does provide a rational suspicion that those persons may be in the possession of and transporting drugs.  (*Ibid.*)  Under such circumstances, an officer has "specific and articulable facts to conduct a limited pat down based on officer safety and the presence of drugs.  As the Fourth Circuit Court of Appeals has observed; 'guns often accompany drugs.'  (*U.S. v. Sakyi* (4th Cir.1998) 160 F.3d 164, 169.)" (*Id.* at p. 1378.)

Defendant concedes that Deputies Day and Mekdara lawfully stopped his car for suspended tags.  He argues, however, that the smell of marijuana that emanated from his car did not justify Deputy Mekdara's pat down search.  We disagree.  The smell of marijuana that emanated from defendant's car gave the deputies reasonable suspicion to believe that defendant was in the possession of and transporting marijuana.  (*People v. Collier, supra,* 166 Cal.App.4th at p. 1377.)  That reasonable suspicion justified the deputies in removing defendant from his car and conducting a pat down search for weapons.  (*Ibid.*)

7

Defendant next contends that even if the smell of marijuana provided a basis for the pat down search, "the entry into [his] pocket and the seizure of the marijuana could not be justified under the same rationale." Deputy Mekdara properly searched defendant's pocket. The trial court found that during the course of the pat down search, Deputy Mekdara felt an object in defendant's pocket and asked defendant what it was. Defendant responded that the object was marijuana. Deputy Mekdara removed the marijuana from defendant's pocket. Deputy Mekdara did not search defendant's pocket because defendant's car smelled of marijuana. She searched defendant's pocket because defendant admitted that he had marijuana in his pocket. That admission provided the deputies with probable cause to arrest, and thus to search, defendant. (*People v. Avila* (1997) 58 Cal.App.4th 1069, 1075 ["The Fourth Amendment was not designed to protect a defendant from his own candor"]; *People v. Gorrostieta* (1993) 19 Cal.App.4th 71, 83-84.) That defendant claimed he possessed the marijuana pursuant to a medical "recommendation," did not immunize him from being searched (*People v. Strasburg* (2007) 148 Cal.App.4th 1052, 1055 ["the Compassionate Use Act provides a limited defense against prosecution, but does not provide a shield against reasonable investigations and searches"]) or arrested (*id.* at p. 1058 ["the status of qualified patient does not confer an immunity from arrest. Law enforcement officers may arrest a qualified patient for marijuana offenses where they have probable cause, based on all of the surrounding facts including qualified patient status, when they have reason to believe, for instance, that the arrestee does not possess marijuana for his personal medical purposes. [Citations.]"]). Accordingly , the court did not err in denying defendant's suppression motion.

## II.    Sufficiency of Evidence in Support of Defendant's Conviction for Possessing Marijuana for Sale

Defendant claims that his conviction for possession of marijuana for sale is supported by insufficient evidence. He contends that the possession of slightly more than one-half ounce of marijuana, in the absence of any unequivocal indicia of sales, is

insufficient to support a conviction for possessing marijuana for sale. Sufficient evidence supports the conviction.

### A. Standard of Review

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Avila* (2009) 46 Cal.4th 680, 701.) "We must presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence. [Citation.]" (*People v. Medina* (2009) 46 Cal.4th 913, 919.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) "Substantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom." (*People v. Ugalino* (2009) 174 Cal.App.4th 1060, 1064.) "We 'must accept logical inferences that the jury might have drawn from the circumstantial evidence. [Citation.]' [Citation]." (*People v. Zamudio, supra,* 43 Cal.4th at pp. 357-358.) "The standard of review is the same when the prosecution relies mainly on circumstantial evidence." (*People v. Valdez* (2004) 32 Cal.4th 73, 104.)

### B. Application of Relevant Principles

The jury was instructed with CALJIC No. 12.21 on the elements of possession of marijuana for sale as follows:

"In order to prove this crime, each of the following elements must be proved:

"1. A person exercised control over or the right to control certain marijuana;

"2. That person knew of its presence;

"3. That person knew that the substance had a narcotic character;

9

"4.     That person possessed the substance with the specific intent to sell the same; and

"5.     The substance was in an amount sufficient to be used for sale or consumption."

Defendant expressly does not contend that there is insufficient evidence that he possessed marijuana or that he knew of its presence and narcotic character and thus effectively concedes the sufficiency of the evidence supporting those elements.  He contends, however, that there is insufficient circumstantial evidence that he intended to sell the marijuana, and that possession of a such a small amount of marijuana is insufficient to support an inference of sales.  There is sufficient evidence of intent, and the amount of marijuana defendant possessed was consistent with possession of marijuana for sale.

The evidence showed that defendant was arrested in possession of 17.77 grams of marijuana, packaged in four plastic bags.  In Palmdale, where defendant was arrested, $10 bought one gram or less of low grade marijuana.  Low level street dealers typically sold bags of marijuana for $5 to $10.  Defendant had $161 in his wallet, consisting of three $20 bills, three $10 bills, twelve $5 bills, and eleven $1 bills.  He claimed that he possessed the marijuana pursuant to a medical "recommendation," but he appeared not to be under the influence at the time of his arrest and no drug paraphernalia was found.  He told Officer Day that he spent between $20 to $40 a day on marijuana—i.e. between about $600 and $1,200 a month—but received only $220 a month in State aid.  When questioned about that shortfall, defendant said that he helped make up the difference by selling marijuana to his friends.  Defendant had a prior conviction in 2009 for possession of marijuana for sale.  The trial court instructed the jury that it could consider defendant's prior conviction for, among other things, the existence of intent.  Deputy Gonzalez, the prosecution's expert on marijuana sales, opined that hypothetical facts based on the facts in this case demonstrated possession of marijuana for sale.  Such evidence, viewed in the light most favorable to the judgment, was evidence from which a reasonable juror could find that defendant possessed an amount of marijuana sufficient to be used for sale and

10

that he intended to sell the marijuana. (*People v. Avila, supra,* 46 Cal.4th at p. 701.) Accordingly, substantial evidence supports the judgment. (*Ibid.*)

**III.    Compassionate Use Act Instruction**

Defendant contends that the trial court erred when it refused his requested instruction that a qualified patient under the Compassionate Use Act may possess up to eight ounces of marijuana. Even if the trial court erred, the error was harmless.

*A.    Background*

Defendant requested the trial court to instruct the jury with a pinpoint instruction on the Compassionate Use Act. The apparent purpose of the requested instruction was to inform the jury that defendant was entitled to possess a certain amount of marijuana under the Compassionate Use Act. The requested instruction provided as follows:

"The State of California's Compassionate Use Act of 1996 allows use of marijuana for medical purposes when recommended by a physician. It ensures that such qualified patients and their primary caregivers are not subject to criminal prosecution or sanction. It does not supercede [*sic*] legislation prohibiting persons from engaging in conduct nor to condone the diversion of marijuana for nonmedicinal purposes or nonmedical purposes.

"The recommended guidelines indicate that a qualified patient or primary caregiver may possess no more than eight ounces of dried marijuana, and, in addition, may also maintain no more than 6 mature plants or 12 immature plants for [a] qualified patient. However, [a] physician may prescribe a larger amount if this recommendation does not meet the qualified patient's need. No individual or group may cultivate or distribute marijuana for profit."

The trial court denied defendant's request. It found that whether defendant possessed the marijuana for his personal use or for sales—i.e., the intent element of possession of marijuana for sale—was not a legal issue or defense, but a factual issue for the jury to decide. The trial court explained that the fact that defendant had a medical

11

marijuana card supported his position that he possessed the marijuana only for personal use while his statement that he sold marijuana to his friends detracted from that position. Defense counsel was free, the trial court ruled, to argue to the jury that the circumstances of the case—including his possession of the "medical marijuana card"—showed that he possessed the marijuana for personal use and nothing more.

### B.      Application of Relevant Principles

"A trial court must instruct the jury, even without a request, on all general principles of law that are '"closely and openly connected to the facts and that are necessary for the jury's understanding of the case." [Citation.] In addition, "a defendant has a right to an instruction that pinpoints the theory of the defense. . . ."' [Citation.] The court may, however, 'properly refuse an instruction offered by the defendant if it incorrectly states the law, is argumentative, duplicative, or potentially confusing [citation], or if it is not supported by substantial evidence [citation].' [Citation.]" (*People v. Burney* (2009) 47 Cal.4th 203, 246.) A trial court's error in refusing a pinpoint instruction is reviewed for prejudice under *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Pearson* (2012) 53 Cal.4th 306, 325, fn. 9; *People v. Hughes* (2002) 27 Cal.4th 287, 362-363.)

Even if the trial court had given defendant's requested pinpoint instruction on the Compassionate Use Act, there was no prejudice. The issue in defendant's trial was whether he intended to sell the marijuana in his possession. Based on the evidence discussed above in connection with defendant's claim that there was insufficient evidence to support the judgment, there is no reasonable probability that the jury would not have found that defendant intended to sell the marijuana in his possession and that he therefore was guilty of possession of marijuana for sale. (*People v. Watson, supra,* 46 Cal.2d at p. 836; *People v. Pearson, supra,* 53 Cal.4th at p. 325, fn. 9; *People v. Hughes, supra,* 27 Cal.4th at pp. 362-363.)

12

## IV. *Pitchess* Motion

Defendant asks that we independently review the sealed reporter's transcript of, and the personnel records the trial court reviewed in, an in camera hearing at which the trial court considered the discoverability of Deputy Day's and Deputy Mekdara's personnel records.[4] After our independent review, we conclude that the trial court did not abuse its discretion in ruling on defendant's *Pitchess* motion.

### A. *Background*

Defendant filed a *Pitchess* motion seeking discovery from Deputy Day's and Deputy Mekdara's personnel files of identifying information for persons, if any, who made complaints about Deputy Day or Deputy Mekdara for a wide variety of misconduct. The unsigned declaration of defendant's attorney in support of the motion stated that defendant did not say to Deputies Day and Mekdara, "I gotta do what I gotta do. Sometimes I slang the homies a sack real quick to keep me going." The declaration alleged that the deputies fabricated that statement. The declaration stated that defendant sought discovery of other complaints of fabrication or dishonesty. The trial court found good cause to review only Deputy Day's personnel file, and limited its review to the area of dishonesty including, but not limited to, false report writing.

### B. *Application of Relevant Principles*

"A trial court's ruling on a motion for access to law enforcement personnel records is subject to review for abuse of discretion. (*Pitchess*[, *supra,*] 11 Cal.3d [at p.] 535 [113 Cal.Rptr. 897, 522 P.2d 305].)" (*People v. Hughes, supra,* 27 Cal.4th at p. 330.) We have independently reviewed the sealed record of the in camera proceeding as to Deputy Day to determine if any discoverable information was withheld. The sealed record consists of a reporter's transcript of the hearing in which the trial court provided a detailed description of the documents it examined. (See *People v. Myles* (2012) 53

---

[4] The trial court found good cause to review the personnel records of Deputy Day only, and thus did not review Deputy Mekdara's personnel records.

Cal.4th 1181, 1209 [a trial court's statement of the documents it examined is adequate for purposes of conducting a meaningful appellate review]; *People v. Prince* (2007) 40 Cal.4th 1179, 1285-1286; *People v. Mooc* (2001) 26 Cal.4th 1216, 1229.) We conclude that the trial court did not abuse its discretion in ruling on defendant's *Pitchess* motion. (*People v. Hughes, supra,* 27 Cal.4th at p. 330.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MOSK, Acting P. J.


We concur:


KRIEGLER, J.


MINK, J.*

---

\* Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.