[No. A114145. First Dist., Div. One. Mar. 22, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
GABRIEL REED STRASBURG, Defendant and Appellant.

**COUNSEL**

Jeffrey A. Glick, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Martin S. Kaye and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MARCHIANO, P. J.**—Following the denial of his motion to suppress, defendant Gabriel Reed Strasburg pleaded no contest to misdemeanor possession of more than 28.5 grams of marijuana (Health & Saf. Code, § 11357, subd. (c)). He contends that the sheriff's deputy who seized the marijuana lacked probable cause to search his car because defendant was allowed to possess marijuana under the Compassionate Use Act of 1996 (Health & Saf. Code, § 11362.5). We disagree because the Compassionate Use Act provides a limited defense against prosecution, but does not provide a shield against reasonable investigations and searches. Accordingly, we affirm.

## I. FACTS

We take the facts from the transcript of the hearing on the motion to suppress.

Napa County Deputy Sheriff Aaron Mosely was on routine patrol in Calistoga about 1:40 p.m. on October 25, 2005. He was in the area of Petrified Forest Road and Foothill Boulevard. He saw defendant and another person sitting in a car in the parking lot of the Mobil gas station on Petrified Forest Road. Mosely drove his patrol car into the parking lot and parked to the left and to the rear of defendant's vehicle. He was not blocking defendant's car from leaving and had not activated his lights or siren.

Mosely approached the driver's side of defendant's car. He did not have his gun drawn. As Mosely approached the car, defendant opened the driver's door. Mosely immediately smelled the odor of marijuana. Defendant admitted he had been smoking marijuana just before Mosely arrived. Defendant immediately told Mosely that he had "a medical marijuana card," but Mosely did not ask to see it. Mosely never saw a medical marijuana card because he never asked to see it. Mosely looked at defendant's driver's license and determined that it was valid.

Mosely asked defendant if he had marijuana on his person or in the car. Defendant said he did and retrieved a Ziploc bag which he gave to Mosely, claiming it contained about three-quarters of an ounce of marijuana.

At this point, Mosely asked defendant to get out of the car. The deputy saw another bag of marijuana in the car in plain sight, which defendant gave him. This second bag contained 2.2 grams of marijuana.

Mosely testified that after defendant got out of his car, defendant again told him that he had a medical marijuana card and asked Mosely to look at it. The deputy refused to look at the card and said "something along [the] lines" of "we don't buy that here in Napa County." Mosely was aware of the medical marijuana law, and knew that someone with a doctor's recommendation could legally possess up to eight ounces of marijuana—and he knew at that point in the encounter that defendant only possessed three-quarters of an ounce to an ounce. Mosely made his "we don't buy that" remark because he was under the mistaken impression that medical marijuana cards were not recognized in Napa County.

Mosely searched defendant while he was outside the car, and found nothing. Both parties characterize this search as a "pat-search," or frisk.

At this point Mosely considered defendant detained, but not under arrest. Defendant was not free to leave. Mosely walked defendant toward the back of his patrol vehicle. Defendant may or may not have been handcuffed. Before he placed defendant in the back of the patrol vehicle, Mosely asked defendant if there was more marijuana in the car. Defendant told Mosely there was, and that it was more than an ounce. Mosely searched the rest of defendant's car and found 23 ounces of marijuana[1] and a scale. The scale was "not a mini-pocket scale," but "a full powered scale able to weigh that [the 23 ounces] all at once." Mosely arrested defendant after he found the 23 ounces and scale in defendant's car.

Defendant testified at the suppression hearing. He said he was getting out of his car as Mosely walked up to it, and did not realize Mosely was there until he turned after opening the car door. When Mosely asked him about the odor of marijuana, defendant told him he had a "medical marijuana card," which was actually a prescription for marijuana from his doctor. Defendant testified that Mosely looked at defendant's driver's license, but refused to look at the prescription, telling defendant that "We don't accept that in Napa County." (Defendant lived in Sonoma County, and that was indicated on his license.) Defendant told Mosely at least twice that Mosely had to accept the marijuana prescription.

The trial court denied the motion to suppress. The court stated: "I believe that once an officer smells marijuana coming from a car that officer can search the car for the marijuana, and I haven't been given any authority that possessing a medical marijuana card deprives the officer of the right to continue with that investigation."

---

[1] Twenty three ounces is not quite one and one-half pounds.

After the motion was denied, defendant entered his no contest plea. The trial court sentenced defendant to two years' probation.

## II. DISCUSSION

Defendant contends that once he produced a doctor's prescription for marijuana, Deputy Mosely had no basis to detain or frisk him, or to search his car. We disagree for the following reasons.

### A.

At the general election on November 5, 1996, the voters approved Proposition 215, entitled Medical Use of Marijuana, which enacted the Compassionate Use Act of 1996 (Health & Saf. Code, § 11362.5) (Act).[2] (See *People v. Mower* (2002) 28 Cal.4th 457, 463 [122 Cal.Rptr.2d 326, 49 P.3d 1067] (*Mower*).) The Act's purpose is "[t]o ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of . . . any . . . illness for which marijuana provides relief." (§ 11362.5(b)(1)(A).)

The Act further provides that "patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction." (§ 11362.5(b)(1)(B).) And sections 11357 and 11358, which criminalize the possession and cultivation of marijuana, "shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." (§ 11362.5(d).)

Subsequently, the Legislature in 2003 enacted Health and Safety Code, division 10, chapter 6, article 2.5, entitled "Medical Marijuana Program" (Article 2.5). (§ 11362.7 et seq.) Article 2.5 provides for a voluntary program for the issuance of a medical marijuana identification card by the State Department of Health Services, upon approval of an application and the payment of fees. (§§ 11362.71–11362.76.)[3]

---

[2] Subsequent statutory references are to the Health and Safety Code. We will refer to subdivisions of section 11362.5 by a less formal citation form, e.g., section 11362.5(d).

[3] See *People v. Wright* (2006) 40 Cal.4th 81, 93–94 [51 Cal.Rptr.3d 80, 146 P.3d 531] (*Wright*) regarding the purpose of the legislation.

██ Article 2.5 also defines a person such as defendant, who did not have a state-issued medical marijuana card, but did have a physician's recommendation—here, a prescription—for medical marijuana, as a "qualified patient." (§ 11362.7, subd. (f).) Normally, a qualified patient is permitted to possess no more than eight ounces of dried marijuana. (§ 11362.77, subd. (a).) A qualified patient may not use medical marijuana under certain circumstances, including "[w]hile in a motor vehicle that is being operated." (§ 11362.79, subd. (d).)

██ In *Mower, supra*, 28 Cal.4th 457, the California Supreme Court held that the Act does not confer a complete immunity from prosecution to a qualified patient. Rather, the Act confers a limited immunity from prosecution, meaning that the qualified patient can raise his status as an affirmative defense at trial or as a ground to set aside an indictment or information prior to trial on the ground of insufficient evidence. (28 Cal.4th at pp. 464, 468–475.)[4] But the status of qualified patient does not confer an immunity from arrest. Law enforcement officers may arrest a qualified patient for marijuana offenses where they have probable cause, based on all of the surrounding facts including qualified patient status, when they have reason to believe, for instance, that the arrestee does not possess marijuana for his personal medical purposes. (28 Cal.4th at pp. 468–469.)

## B.

Defendant contends that because he immediately produced a doctor's prescription for marijuana, thus identifying himself as a qualified patient under the Act, Deputy Mosely was made aware that defendant could possess up to eight ounces of marijuana—and thus had no grounds to detain him, frisk him, or search his car. But the issue is not that simple, in light of *Mower*'s guidance that the Act does not impair reasonable police investigations and searches. A physician's prescription or an identification card under Article 2.5, which defendant did not have, does not provide an automatic protective aegis against reasonable searches.

We agree with the trial court's approach to this case. The operative issue is whether Mosely had probable cause to search defendant's car at the moment he smelled the odor of marijuana, at the outset of his encounter with defendant who was with another person in a parked car in a public parking

---

[4] *Wright, supra*, 40 Cal.4th at pages 92–97 likewise treats the status of a "qualified patient" as a "defense" to criminal liability and not as an absolute immunity.

area. If Mosely did have probable cause to search from the outset, we need not review the grounds for detention, or decide when, or if, the detention ripened into an arrest.[5]

Our standard of review is clear. We review the trial court's express or implied findings of fact under the deferential substantial evidence standard. We review the trial court's selection of applicable legal principles, and the application of those principles to the facts, independently. As such, we determine as a matter of law whether there has been an unreasonable search. (*People v. Ayala* (2000) 23 Cal.4th 225, 255 [96 Cal.Rptr.2d 682, 1 P.3d 3]; *People v. Miranda* (1993) 17 Cal.App.4th 917, 922 [21 Cal.Rptr.2d 785].) In particular, we independently review a determination of probable cause. (*Ornelas v. United States* (1996) 517 U.S. 690, 699 [134 L.Ed.2d 911, 116 S.Ct. 1657].)

■ Hornbook law states that the Fourth Amendment to the United States Constitution permits the warrantless search of an automobile with probable cause. (See *United States v. Ross* (1982) 456 U.S. 798, 804–809 [2 L.Ed.2d 572, 102 S.Ct. 2157]; *Carroll v. United States* (1925) 267 U.S. 132, 153–154 [69 L.Ed. 543, 45 S.Ct. 280]; *People v. Chavers* (1983) 33 Cal.3d 462, 467–468 [189 Cal.Rptr. 169, 658 P.2d 96].) The scope of such a warrantless search is defined by the nature of the items being sought: "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." (*Ross, supra*, at pp. 824–825.)

■ Under the facts and circumstances of this case, Deputy Mosely had probable cause to search defendant's car for marijuana after he smelled the odor of marijuana. (*People v. Dey* (2000) 84 Cal.App.4th 1318, 1320–1322 [101 Cal.Rptr.2d 581]; see *People v. Hunter* (2005) 133 Cal.App.4th 371, 378–382 [34 Cal.Rptr.3d 818].) Defendant admitted smoking marijuana, and the deputy sheriff saw another bag of marijuana in the car after defendant handed him one. Armed with the knowledge that there was marijuana in the car, "a person of ordinary caution would conscientiously entertain a strong suspicion that even if defendant makes only personal use of the marijuana found in [the passenger area], he might stash additional quantities for future use in other parts of the vehicle, including the trunk." (*Dey, supra*, at p. 1322.)

■ The fact that defendant had a medical marijuana prescription, and could lawfully possess an amount of marijuana greater than that Deputy

---

[5] We also do not need to address defendant's claim that his statements to Mosely were unlawfully obtained.

Mosely initially found, does not detract from the officer's probable cause. As *Mower* observes, the Act provides a limited immunity—not a shield from reasonable investigation. An officer with probable cause to search is not prevented from doing so by someone presenting a medical marijuana card or a marijuana prescription. Given the probable cause here, the officer is entitled to continue to search and investigate, and determine whether the subject of the investigation is in fact possessing the marijuana for personal medical needs, and is adhering to the eight-ounce limit on possession. Unlawful possession of marijuana remains a criminal offense under section 11350, subject to seriously ill persons using marijuana for medical purposes recommended by a physician (section 11362.5(b)(1)(A)) not being subject to criminal liability (section 11362.765).

We note that defendant was not sitting at home nursing an illness with the medicinal effects of marijuana. He was smoking in a parked car in a public place, a gas station parking lot, with another person. Defendant initially produced a separate bag of marijuana, albeit under the eight-ounce limit. Deputy Mosely could reasonably suspect that defendant, who was in the driver's seat, was about to drive off after smoking marijuana. That point aside, the overall circumstances justified the deputy sheriff's search of the car to determine if more marijuana was present. Defendant's response led to a search that ultimately revealed defendant was in possession of 23 ounces of marijuana and a scale—a strong suggestion that he was using the Act as a facade to conceal illegal activity. A qualified patient is limited to eight ounces for personal medical use under sections 11362.765 and 11362.77.

Defendant relies on a number of cases for the proposition that an officer cannot "selectively ignore evidence that demonstrates a lack of . . . probable cause." The cases are distinguishable because they involve situations in which no probable cause was initially present. Defendant's argument that his prescription showed a lack of probable cause is inaccurate.[6] Probable cause was created by the odor and presence of marijuana in a parked car occupied by two persons. Had defendant possessed only eight ounces, he presumably could have invoked the Act as a defense to prosecution of the case. But Mosely did not have to stop searching in the face of the marijuana prescription and the circumstances of how the smoking occurred. Otherwise, every qualified patient would be free to violate the intent of the medical marijuana program expressed in section 11362.5 and deal marijuana from his car with complete freedom from any reasonable search.

The trial court properly denied the motion to suppress.

---

[6] Section 11362.78 prohibits law enforcement agencies from refusing to accept valid identifications cards, but does not provide a shield against reasonable searches based on probable cause.

## III. DISPOSITION

The judgment and sentence are affirmed.

Stein, J., and Swager, J., concurred.

On April 3, 2007, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied July 11, 2007, S152266.