Filed 7/24/14  P. v. Stormoen CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE, | 2d Crim. No. B253681 |
| Plaintiff and Respondent, | (Super. Ct. No. 1423224)<br>(Santa Barbara County) |
| v. | |
| JERE ALAN STORMOEN, | |
| Defendant and Appellant. | |

Jere Alan Stormoen appeals an order of probation granted following his nolo contendere plea to possession of concentrated cannabis.  (Health & Saf. Code, § 11357, subd. (a).)[1]  We decide that the trial court properly denied Stormoen's motion to quash two search warrants and suppress evidence of processed marijuana and marijuana plants, among other items seized.  (Pen. Code, § 1538.5, subd. (a)(1).)

## FACTUAL AND PROCEDURAL HISTORY

### Matthews Street Search Warrant

On June 8, 2012, Mark Gallagher, a detective in the University of California Santa Barbara Police Department, obtained a search warrant for a search of a warehouse building located at 5910 Matthews Street in Goleta.  Gallagher had served as a police officer for 20 years and was then a special agent for the Santa Barbara County

---

[1] All further statutory references are to the Health and Safety Code unless stated otherwise.

narcotics enforcement team. He declared in the search warrant affidavit that Sergeant Mark Vellekamp informed him that he had noticed a strong odor of marijuana emanating from the Matthews Street warehouse on two occasions in May 2012. Vellekamp stated that fans in the rear of the warehouse blew air toward the neighboring residence in which Vellekamp had stood.

On May 21, 2012, Gallagher and Vellekamp visited the neighboring residence and, with the consent of the property owner, stood in the backyard near the property boundary. The officers saw a yellow-colored warehouse, heard fans operating, and smelled marijuana. They also took photographs of the warehouse.

The officers then drove to the front of the warehouse, which did not have signage identifying it as a business. The warehouse had a security camera placed on the front of the building facing the street approach.

Gallagher then requested that Agent Valenti of the county narcotics enforcement team monitor the warehouse. In the early mornings of May 22, 2012, and June 3, 2012, Valenti visited the warehouse and noticed a fresh marijuana odor near the front door. Valenti also noticed the absence of marijuana odor at neighboring properties.

Gallagher later checked city business records to determine the owner of the warehouse and the nature of any business there. City records indicated that the address was the office of an automotive repair shop. Gallagher then drove to the warehouse location and found an automotive repair shop in operation directly across the street.

Gallagher stated in the search warrant affidavit that licensing the warehouse as an automotive repair shop was a subterfuge to avoid detection by law enforcement. Gallagher also stated that the "mere size of the structure" suggested that "the volume of marijuana being cultivated would exceed any legitimate use."

On June 12, 2012, Gallagher and Valenti executed the search warrant and found 200 cultivated marijuana plants within the warehouse, as well as documents bearing Stormoen's name. An automobile registered to Stormoen at a 1231 Chino Street address was parked in front of the warehouse. The officers later spoke with the warehouse property owner who also owned the nearby automobile repair shop. He

informed the officers that Stormoen leased the warehouse for his stated purpose of storing wine and building wine furniture.

*1231 Chino Street, Unit B Search Warrant*

On June 12, 2012, Gallagher obtained a search warrant for a search of Stormoen's Chino Street residence. Gallagher executed the warrant that evening and found marijuana and $1,787 in currency.

Stormoen filed a motion to quash the search warrants and suppress evidence of processed marijuana and marijuana plants, among other things.

During the pendency of the suppression motion and pursuant to a plea agreement, Stormoen pleaded nolo contendere to possession of concentrated cannabis. (§ 11357, subd. (a).) The plea agreement provided that Stormoen could withdraw his nolo contendere plea in the event the trial court granted the suppression motion, and the prosecutor would then dismiss the case.

On October 31, 2013, following argument by the parties, the trial court denied Stormoen's motion to quash the search warrants and suppress evidence. In ruling, the trial judge stated that the totality of the circumstances established probable cause to search the warehouse and the residence.

On January 9, 2014, the prosecutor dismissed the two additional charged counts in accordance with the plea agreement. The court then granted Stormoen three years of felony probation with terms and conditions, including two days of confinement in county jail with credit for time served, payment of various fines and fees, and reduction of the offense to a misdemeanor following 18 months of successful probation.

Stormoen appeals and contends that the trial court erred by denying his motion to quash the search warrants and suppress evidence because the information set forth in the asserted "bare-bones" affidavit is consistent with the lawful possession and cultivation of marijuana. (*People v. Waxler* (2014) 224 Cal.App.4th 712, 718 [defendant may challenge denial of suppression motion by appealing judgment entered following his guilty or nolo contendere plea].)

3

*DISCUSSION*

Stormoen challenges probable cause to search the warehouse and later his residence, pointing out that the Compassionate Use Act of 1996 (§ 11362.5, "CUA") and the Medical Marijuana Program (§ 11362.7 et seq. "MMP") permit lawful cultivation of marijuana for medicinal purposes. He points out that the Attorney General's guidelines regarding marijuana cultivation recommend security precautions and do not require signage. Stormoen relies on *People v. Colvin* (2012) 203 Cal.App.4th 1029, 1041, to add that a marijuana collective pursuant to the MMP may have thousands of members. In sum, he contends that Gallagher did not sufficiently investigate the circumstances to rule out the existence of legitimate marijuana cultivation.

In reviewing a search conducted pursuant to warrant, an appellate court determines whether the magistrate had a substantial basis for concluding that a fair probability existed that a search would uncover wrongdoing. (*Illinois v. Gates* (1983) 462 U.S. 213, 238-239; *People v. Scott* (2011) 52 Cal.4th 452, 483.) "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (*Illinois v. Gates*, at p. 238.) The magistrate's determination of probable cause is entitled to deferential review. (*Scott*, at p. 483.) "Probable cause sufficient for issuance of a warrant requires a showing in the supporting affidavit that makes it substantially probable that there is specific property lawfully subject to seizure presently located in the particular place for which the warrant is sought." (*Ibid.*)

In 1996, the CUA was approved by the California electorate as part of Proposition 215 and codified in section 11362.5. Subdivision (d) of section 11362.5 provides: "Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical

4

purposes of the patient upon the written or oral recommendation or approval of a physician."

In 2003, the Legislature enacted the MMP, effective January 1, 2004. The MMP added section 11362.775 which provides: "Qualified patients, persons with valid identification cards, and the designated primary caregivers of qualified patients and persons with identification cards, who associate within the State of California in order collectively or cooperatively to cultivate marijuana for medical purposes, shall not solely on the basis of that fact be subject to state criminal sanctions under [certain Penal Code sections pertaining to narcotics]." The MMP voluntary identification card scheme provides protection against arrest for certain marijuana-related offenses. (*People v. Kelly* (2010) 47 Cal.4th 1008, 1014.)

The CUA and the MMP establish exceptions to specified marijuana-related offenses, which exceptions must be raised and then proved as affirmative defenses by the defendant. (*People v. Wright* (2006) 40 Cal.4th 81, 85.) The laws do not alter the probable cause analysis; they provide a limited immunity, not a shield from reasonable investigation. (*People v. Mower* (2002) 28 Cal.4th 457, 469 [CUA provides a limited immunity to a "qualified patient"]; *id.* at pp. 468-469; *People v. Waxler*, *supra*, 224 Cal.App.4th 712, 723, 725 [defendant's possession of marijuana identification card did not vitiate officer's probable cause to search vehicle]; *People v. Fisher* (2002) 96 Cal.App.4th 1147, 1149 [officers not required to abandon search authorized by warrant when resident produces documents reflecting physician's permission to possess marijuana].) "The medical marijuana laws were never intended to be 'a sort of "open sesame" regarding the possession, transportation and sale of marijuana in this state.'" (*People v. Wayman* (2010) 189 Cal.App.4th 215, 223.) Rather, the laws intend that "seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician . . . ." (§ 11362.5, subd. (b)(1)(A); *People v. Strasburg* (2007) 148 Cal.App.4th 1052, 1057.)

Here the officers smelled fresh marijuana on several occasions and heard fan noises from the warehouse suggestive of marijuana cultivation. The warehouse displayed no business signs, had a security camera posted on the front, and linked its address to a nearby auto repair business. The officers possessed no information suggesting the possibility that the marijuana in the warehouse was being cultivated lawfully pursuant to the CUA or the MMP. Rather, when they obtained a search warrant, the information that they possessed pointed to the presence and cultivation of marijuana in violation of the criminal laws. (*People v. Hochanadel* (2009) 176 Cal.App.4th 997, 1018-1019 [information known to police officers at the time they obtained the search warrant demonstrated probable cause to believe defendants were not complying with CUA and MMP].)

Acts of possession or cultivation of marijuana are criminal offenses, subject to the CUA and the MMP. (§§ 11357, 11358; *People v. Waxler*, *supra*, 224 Cal.App.4th 712, 721; *People v. Strasburg*, *supra*, 148 Cal.App.4th 1052, 1060.) Gallagher's information regarding the odor of fresh marijuana, the fan operation, the lack of signage, and the licensing of the warehouse with the name of an auto repair business, permitted his rational conclusion based upon his police officer experience that a fair probability existed that a search would uncover wrongdoing. (*Illinois v. Gates*, *supra*, 462 U.S. 213, 238-239.) Given probable cause to believe that the warehouse contained marijuana, the officers were entitled to search to determine whether the marijuana possession and cultivation were lawful. (*Waxler*, at p. 723; *Strasburg*, at p. 1060.) For these reasons, we conclude that the officers had no additional duty to establish whether anyone on the property had medical authorization to possess or cultivate the marijuana. (*People v. Mower*, *supra*, 28 Cal.4th 457, 469.)

Moreover, the good faith belief exception of *United States v. Leon* (1984) 468 U.S. 897, 922-923, precludes application of the Fourth Amendment exclusionary rule here. Given the probable cause to believe that the warehouse unlawfully contained a large quantity of fresh marijuana, no reasonable officer would have known that a search warrant based on such apparent probable cause would be defective. Stormoen cites no

6

judicial decision holding that the odor of marijuana and the sounds of fans no longer raise an inference of criminality.  The officers here could not reasonably have been expected to anticipate such a decision.  Police officers are charged with having a "reasonable knowledge" of the law, not prescience.  (*People v. Fleming* (1994) 22 Cal.App.4th 1566, 1573.)

The order granting probation is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.


We concur:


YEGAN, J.


PERREN, J.

Jean M. Dandona, Judge

Superior Court County of Santa Barbara

_____

Seymour Weisberg for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, John Yang, David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.