Filed 3/11/15  P. v. Morgan CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059403 |
| v. | (Super.Ct.No. SICRF1253273002) |
| TIMOTHY CLIFFORD MORGAN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Inyo County.  Brian Lamb and Barry Hammer, Judges.[*]  Affirmed.

Erica Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

---

[*] Barry Hammer is a retired judge of the San Luis Obispo Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Alana Cohen Butler, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Timothy Clifford Morgan pleaded no contest to a drug charge after the lower courts twice denied his motion to suppress evidence under Penal Code section 1538.5.  The appeal raises the single issue that the trial court erred in denying his motion to suppress.  We affirm.

FACTS AND PROCEDURAL HISTORY

The charges arose out of a traffic stop on February 4, 2012.  Officer Brent Gillespie of the Bishop Police Department was on patrol at nearly 11:00 p.m., when he saw a black sedan traveling east on Elm Street.  The black sedan made a right turn onto Central Avenue without displaying a turn signal.  Officer Gillespie followed.  The black sedan made a second turn, westbound onto East Pine Street.  Again, no rear turn signal light displayed.  However, Officer Gillespie could see an auxiliary turn signal light flashing on the sedan's side mirror, even though the sedan's taillight was not blinking.  As the black sedan executed the second turn, Officer Gillespie also saw a large crack in the sedan's windshield.  He decided to make a traffic stop on the black sedan.

Officer Gillespie approached the stopped sedan on the passenger side.  As he walked alongside the sedan, he could see a lot of trash and other debris in the passenger compartment; he said he also could smell the odor of marijuana emitting from the passenger side window.  Officer Gillespie never mentioned this odor throughout the

2

encounter, however. Defendant was driving the sedan; Kelly Lynn Greene was sitting in the front passenger seat.

Officer Gillespie believed it was "past practice" to have a driver get out of the stopped vehicle when he was writing a traffic citation. Accordingly, Officer Gillespie had defendant step out of the sedan and stand with Officer Gillespie next to his patrol car while he checked the validity of defendant's driver's license. Defendant gave Officer Gillespie his driver's license, automobile registration, and proof of insurance. Officer Gillespie verified that there were no outstanding warrants for defendant. Backup officers soon arrived, but stood aside while Officer Gillespie conducted his investigation. Officer Gillespie thought defendant seemed "overly nervous" while standing by the patrol car, and he noticed that defendant's hand was shaking. However, after verifying defendant's documentation, Officer Gillespie wrote a citation for failure to use turn signals and having a defective windshield. He advised defendant that defendant was then free to leave. Officer Gillespie issued the citation within about five minutes of the traffic stop. Defendant walked back toward the sedan.

After telling defendant that he was free to leave, Officer Gillespie decided to initiate another contact with defendant. Officer Gillespie asked if he could speak to defendant; defendant walked back to Officer Gillespie's patrol car. Officer Gillespie determined in his own mind at that point that defendant was no longer free to leave.

Officer Gillespie then asked whether defendant had anything illegal in the car. At first, defendant denied having anything illegal, but then admitted there was a marijuana

pipe in the sedan. Officer Gillespie asked if defendant had an authorization card for medical marijuana; defendant gave the officer documentation showing that "he had been recommended for marijuana usage." Officer Gillespie told defendant that he was going to "verify your card." Defendant asked if he was free to leave, and the officer said no. No testimony or evidence was proffered to show what Officer Gillespie did to verify the validity, or lack thereof, of defendant's authorization for medical marijuana use.

Once defendant had told Officer Gillespie about the marijuana pipe, the officer intended to search the sedan. Officer Gillespie then approached Greene, the passenger in the sedan, and asked her if there was anything illegal in the car. Greene admitted there was a marijuana pipe under the seat.

Officer Gillespie proceeded to search the sedan. He found two marijuana pipes, one under the seat and one in a cup holder. He also found a closed box behind the driver's seat. The box was decorated with stickers depicting leaves of marijuana plants. Officer Gillespie asked defendant and Greene for permission to open the box, but both refused. Nevertheless, Officer Gillespie opened the box and found marijuana and a quantity of cash, as well as a smaller, locked box inside. He proceeded to open the second box. Inside the smaller box, he found suspected methamphetamine, packaging materials, scales, and other drug paraphernalia.

As a result, defendant was arrested, and he was charged in a criminal complaint with transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a)) (count 1); possession of methamphetamine for sale (Health & Saf. Code, § 11378)

4

(count 2); possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a))

(count 3); and possession of cocaine (Health & Saf. Code, § 11350, subd. (a)) (count 4).

Defendant filed a motion to suppress the evidence under Penal Code

section 1538.5. The court denied the motion.

Defendant waived his right to a preliminary hearing on the charges, and the

prosecutor filed an information alleging the same violations as were contained in the

felony complaint. Defendant renewed his motion to suppress in the trial court. The court

conducted a hearing, and again denied the motion.

After these rulings, defendant agreed to plead no contest to count 2 (possession of

methamphetamine for sale), in exchange for dismissal of the remaining counts. The court

suspended imposition of sentence and placed defendant on formal probation for 36

months.

Defendant filed a notice of appeal.

ANALYSIS

I. Standard of Review

" 'The denial of a suppression motion may be challenged by an appeal from the

judgment entered after defendant's guilty or no contest plea. [Citations.] " 'The standard

of appellate review of a trial court's ruling on a motion to suppress is well established.

We defer to the trial court's factual findings, express or implied, where supported by

substantial evidence. In determining whether, on the facts so found, the search or seizure

was reasonable under the Fourth Amendment, we exercise our independent judgment.

[Citations.]' [Citations.]" ' [Citation.]" (*People v. Waxler* (2014) 224 Cal.App.4th 712, 718.)

## II. The Search Was Supported by Probable Cause

Defendant contends that Officer Gillespie did not have probable cause to search the sedan because defendant had provided some evidence to show that he could lawfully possess marijuana. We disagree.

The salient case is *People v. Strasburg* (2007) 148 Cal.App.4th 1052. There, an officer on patrol saw two men sitting in a parked car in a gas station parking lot. The officer stopped next to the parked car and got out of his patrol vehicle. As the officer approached the driver's side door of the parked car, the driver opened the door. The officer immediately smelled the odor of marijuana emanating from the parked car. The driver admitted he had been smoking marijuana just before the officer arrived, but said that he had a medical marijuana card. Although the driver asked the officer to look at his marijuana card (actually a prescription), the officer refused, in the mistaken belief that the medical marijuana law did not apply in that county. The officer asked the driver if he had any marijuana on his person or in the car. The driver produced a baggie of marijuana, weighing about three quarters of an ounce. The officer asked the driver to get out of the car; as the driver did so, the officer saw in plain sight another baggie of marijuana inside the car. The second baggie contained about 2.2 grams of marijuana. The officer detained the driver, frisked him, and placed him in the back of the patrol car. The officer then proceeded to search the car. The search turned up additional marijuana, about one and

6

one-half pounds, and a scale capable of weighing the entire quantity of marijuana. (*Id*. at pp. 1055-1056.)

The driver moved to suppress the evidence obtained during the search. He argued that, once he had produced a card or prescription for medical marijuana, the officer had no right to detain, frisk, or search the driver or his car. The trial court denied the motion to suppress evidence, ruling that, once the officer had smelled the odor of marijuana coming from the parked car, the driver's possession of a marijuana card did not deprive the officer of the right to continue investigating the matter. After the trial court denied the motion to suppress, the driver entered a no contest plea and was placed on probation. (*People v. Strasburg*, *supra*, 148 Cal.App.4th 1052, 1056-1057.)

On appeal, the appellate court affirmed. The Compassionate Use Act of 1996 (Prop. 215, as approved by voters, Gen. Elec. (November 5, 1996) (CUA); see Health & Saf. Code, § 11362.5) provides for a limited immunity from prosecution for violation of the general criminal statutes prohibiting possession or cultivation of marijuana. (Health & Saf. Code, §§ 11357, 11358.) Some years after passage of Proposition 215, in 2003 the Legislature enacted a Medical Marijuana Program (MMP), providing for voluntary issuance of medical marijuana identification cards by the Department of Health Services. (Health & Saf. Code, § 11362.7, et seq.) Qualified patients under the MMP are permitted to possess a limited quantity of dried marijuana for personal medicinal use. (Health & Saf. Code, § 11362.77, subd. (a).) Even qualified patients are not permitted to use marijuana under certain circumstances, including inside a motor vehicle when it is being

7

operated.  (Health & Saf. Code, § 11362.79, subd. (d).)  The limited immunities provided by the CUA and the MMP afford a qualified patient an affirmative defense in case of prosecution for unlawful possession or cultivation of marijuana.  However, the court relied on California Supreme Court precedent that the CUA (and presumably the MMP legislation) does not provide immunity from arrest or investigation.  (*People v. Strasburg*, *supra*, 148 Cal.App.4th 1052, 1058, citing *People v. Mower* (2002) 28 Cal.4th 457, 468-469.)

Defendant argues that this case can be "easily distinguished" from *Strasburg*, because the driver in that case readily admitted having smoked marijuana in the car just before the officer arrived, and because the driver produced one baggie of marijuana, the officer saw a second baggie in plain view in the vehicle, and the driver admitted that there was even more marijuana inside the car.  (*People v. Strasburg*, *supra*, 148 Cal.App.4th 1052, 1055-1056.)  The officer in *Strasburg* had both smelled the odor of marijuana coming from the car, and observed the presence of marijuana in the car.  Here, defendant argues, Officer Gillespie may have smelled some odor of marijuana coming from the black sedan, but he did not see any marijuana in the passenger compartment, nor did he have evidence that any marijuana had recently been smoked inside the sedan.  Indeed, Officer Gillespie either did not, or could not, distinguish the odor of burnt marijuana from unburnt marijuana.  Defendant argues that, "[a]bsent the facts described by *Strasburg*, namely the suspicious manner in which the vehicle was parked, the officer's knowledge that the defendant possessed marijuana in the vehicle, and the fact

8

that the defendant admitted to smoking inside of the vehicle, [Officer] Gillespie lacked probable cause to search [defendant's] vehicle."

We are not persuaded. The most prominent factor in *Strasburg* was the odor of marijuana emanating from the parked car. "The operative issue is whether [the officer] had probable cause to search defendant's car at the moment he smelled the odor of marijuana, at the outset of his encounter with defendant who was with another person in a parked car in a public parking area." (*People v. Strasburg*, *supra*, 148 Cal.App.4th 1052, 1058-1059.) The court went on to state that, "[u]nder the facts and circumstances of this case, [the investigating officer] had probable cause to search defendant's car for marijuana after he smelled the odor of marijuana. (*People v. Dey* (2000) 84 Cal.App.4th 1318, 1320-1322 [101 Cal.Rptr.2d 581]; see *People v. Hunter* (2005) 133 Cal.App.4th 371, 378-382 [34 Cal.Rptr.3d 818].)" (*Id.* at p. 1059.)

The *Strasburg* court flatly rejected the notion that possession of an authorization to use medical marijuana dispelled probable cause to search a motor vehicle for contraband. "[I]n light of *Mower*'s guidance that the Act does not impair reasonable police investigations and searches[,] [a] physician's prescription or an identification card under Article 2.5, . . . does not provide an automatic protective aegis against reasonable searches." (*People v. Strasburg*, *supra*, 148 Cal.App.4th 1052, 1058.) As in "[*People v.*] *Mower*, *supra*, 28 Cal.4th 457, the California Supreme Court held that the Act does not confer a complete immunity from prosecution to a qualified patient. Rather, the Act confers a limited immunity from prosecution, meaning that the qualified patient can raise

9

his status as an affirmative defense at trial or as a ground to set aside an indictment or information prior to trial on the ground of insufficient evidence.  [Citation.]  [Fn. omitted.]  But the status of qualified patient does not confer an immunity from arrest. Law enforcement officers may arrest a qualified patient for marijuana offenses where they have probable cause, based on all of the surrounding facts including qualified patient status, when they have reason to believe, for instance, that the arrestee does not possess marijuana for his personal medical purposes.  [Citation.]"  (*People v. Strasburg*, *supra*, 148 Cal.App.4th 1052, 1058.)

The possession of marijuana is still a crime, and the CUA and the MMP provide only a limited immunity from criminal penalties.  That is, those statutes will provide a defense to a criminal charge, not immunity from investigation or arrest.  The possession of a medical marijuana card, prescription, or other authorization does not change the nature of marijuana as contraband.  Even qualified patients may not use marijuana in a motor vehicle that is being operated.  Even qualified patients may not possess more than a specified quantity of marijuana.

The odor of marijuana emanating from a vehicle is evidence that marijuana is present in or has recently been used in the vehicle.  The odor of marijuana indicates the likely presence of marijuana, but does not specify the quantity present.  Neither does it indicate who possessed the marijuana.  The odor of marijuana thus provides probable cause for further investigation and search:  the marijuana present may not have belonged to a qualified patient; even if possessed by a qualified patient, it may have been

10

unlawfully used in an operating motor vehicle; and even if possessed by a qualified patient, it may exceed the allowable amount. As the *Strasburg* court pointed out, the defendant "was not sitting at home nursing an illness with the medicinal effects of marijuana." (*People v. Strasburg*, *supra*, 148 Cal.App.4th 1052, 1060.) Likewise, defendant here likely had marijuana in a moving vehicle, not at home.

The probable possession of marijuana in a moving vehicle brings any search within the automobile exception to the warrant requirement of the Fourth Amendment. (See *United States v. Ross* (1982) 456 U.S. 798, 804-809 [2 L.Ed. 2d 572, 102 S.Ct. 2157]; *Carroll v. United States* (1925) 267 U.S. 132, 153-154 [69 L.Ed. 543, 45 S.Ct. 280]; *People v. Chavers* (1983) 33 Cal.3d 462, 467-468 [189 Cal.Rptr. 169, 658 P.2d 96].) The scope of such a warrantless search is defined by the nature of the items being sought: "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." (*United States v. Ross*, *supra*, 456 U.S. 798, 824-825.) The search of the black sedan was supported by probable cause, and justified the search into any containers capable of holding marijuana.

The court below properly relied on *Strasburg* as the controlling case, and properly denied defendant's motion to suppress evidence.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER                    
                        J.

We concur:


RAMIREZ                
              P. J.


HOLLENHORST          
                J.