Filed 2/29/16  P. v. Jah CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>DAVID S. JAH,<br><br>　　　Jah and Appellant. | A143101<br><br>(Alameda County<br>Super. Ct. No. H54614) |
| DAVID S. JAH,<br>　　　Petitioner,<br>v.<br>THE SUPERIOR COURT OF ALAMEDA COUNTY,<br>　　　Respondent. | P. v. Jah CA1/3<br><br>(Alameda County<br>Super. Ct. No. H54614) |

On appeal from a judgment entered following his no contest plea, David Jah argues the court erred when it denied his motion to withdraw his plea, failed to conduct a *Marsden*[1] hearing, accepted his plea without finding its factual basis, and declined to issue a certificate of probable cause.  He raises essentially the same claims and asserts they were due to ineffective assistance of counsel in a petition for writ of mandate and/or habeas corpus which we ordered consolidated with his appeal.  We deny the petition and dismiss the appeal.

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118.

1

# BACKGROUND

Our statement of facts is based on the probation report. On the evening of July 3, 2013, officers observed Jah make a left turn without signaling. When the officers stopped Jah's car they smelled a strong odor of burnt marijuana coming from its interior. Jah's eyes were red, bloodshot and watery, his responses were slow and delayed, and he appeared disoriented. He admitted smoking marijuana earlier in the day and submitted to a series of field sobriety tests. Based on his performance of those tests and objective signs of being under the influence, he was placed under arrest.

The officers found a loaded nine-millimeter handgun, 28.225 grams of marijuana and 14.022 grams of methamphetamine in Jah's car and $1,911 in cash in his wallet. Jah was charged with possession of a controlled substance with a firearm, possession of a controlled substance for sale, possession of a firearm by a felon, carrying a concealed firearm in a vehicle, and possession of more than 28.5 grams of marijuana. The information also alleged a prior felony conviction for possession of cocaine base.

On August 22, 2013, Jah, represented by attorney Daniel Duvernay, waived his right to a preliminary hearing and entered his no contest plea to possession of a controlled substance with a firearm. The remaining counts were dismissed pursuant to the terms of the plea bargain and the prior felony was stricken for purposes of sentencing. The People further agreed Jah would not be charged with any driving under the influence offenses related to the arrest and would be sentenced to five years' probation subject to various conditions and forfeitures. Jah was properly advised of the terms and conditions of the plea bargain and admonished as to his rights and the consequences of his plea. The court accepted the plea.

On September 16, 2013, Jah filed a pro per motion for discovery "including, but not limited to; all police reports, dispatch communications, lab report results, recorded phone calls, memorandum, notes, e-mails, flash messages, supplemental reports, incident reports, and all documents regarding DAVID JAH in the matter of Dublin PD-D13-01974. As well as transcripts from plea agreement hearing," which he asserted were "crucial to . . . Jah's defense and possible civil claim in this matter."

2

The sentencing hearing was held on September 23.  Defense counsel Richard Ortega said he was not certain how Jah wanted to proceed, but after conferring with Jah he said they were ready to proceed with sentencing.  The court stated the terms of the negotiated sentence and asked Jah if he accepted the terms and conditions of probation.  Jah asked, "When will I be getting the exoneration paperwork?"  The court told him to speak with his attorney and passed the matter to allow them to confer.  When the hearing resumed the court again asked Jah if he accepted the stated terms and conditions of probation.  Jah said "Yes. I just wanted—you said to ask my attorney that I would be able to get the discovery.  We have a proposed order that the judge has."  Defense counsel said he would give Jah a copy of all the discovery in his possession, and the prosecutor said he would give him the drug test results.  Ortega commented that he thought Jah was accepting the probation terms and conditions but had a question about the return of forfeited property and a "proposed order that's already been submitted to the court.  I'm unaware of that."  Jah then formally accepted the terms and conditions of probation.  The court commented that Jah still seemed interested in discovery, but defense counsel said "No.  This case is over."

On October 3, 2013, Jah filed a pro se motion to withdraw his plea.  He maintained, inter alia, that he had not been informed that his plea would make him ineligible for food stamps; he was cut off at sentencing when he tried to tell the court about mitigating factors; he was innocent; the probable cause for his arrest was fabricated; his attorneys failed to provide effective assistance and ignored his request to withdraw his plea based on an illegal arrest; and the trial court "strategically interrupted and ignored him at the plea hearing when he tried to complain about his attorney's failure to defend him.  Jah filed a second pro se motion on December 23, 2013, this time to submit a video recording that he claimed would prove his arrest was unlawful, his innocence, the fabrication of the police report, and his various attorneys' misconduct for failure to investigate.  Specifically, Jah argued "the police states Jah could not hold [his] foot up longer than five seconds [throughout the] test yet the video shows Jah counting up to ten."  He also asserted that his attorneys committed misconduct and ineffectively

3

represented him "by the lack of investigation arranging a guilty plea [without] complete discovery and failing to act with diligence concerning the video evidence which was ignored . . . ."

The public defender's office subsequently declared a conflict and private attorney Robbi Cook was appointed to represent Jah on his motion to withdraw his plea. In a written motion filed March 21, 2014, Cook asserted there was good cause to set aside Jah's plea due to fabricated statements by officers in the police reports to support probable cause; Jah was denied the opportunity to present videotape evidence proving the officers lied; his prior counsel did not advise him he would lose the right to challenge his arrest if he pleaded no contest; he signed the change of plea form under duress; and his plea was involuntary because he had not been given his drug screening results. On April 11 Jah filed a pro per motion to suppress asserting that his arrest was illegal, he was innocent, and his counsel failed to investigate the case and defend him. Jah provided a link to a website he said contained evidence, including his video, that the arresting officers lied about his field sobriety tests and demeanor and otherwise fabricated their report.

The hearing on Jah's motion to withdraw his plea was held on June 20 and July 25, 2014. Jah recounted the events surrounding his arrest and denied that he had been impaired that day or was disoriented and slow to respond to officers. He testified that the video showed him holding his foot up for 10 seconds although the police report said he could not hold his foot up for more than five seconds. He also said the video contradicted statements in the police report that his car had tinted windows.

Jah said that on the day set for his motion to suppress in Pleasanton, his public defender, Mr. Duvernay, told him about the plea deal being offered by the district attorney and he decided to accept it. Jah and Duvernay had discussed Jah's position that he was innocent and the arrest was unlawful, and Duvernay had viewed the video evidence.[2] At some point, Jah testified, Duvernay advised him he could continue to

_____

[2] Later Jah testified that Duvernay only watched part of the video.

4

litigate his motion to suppress in Hayward, where the court was more lenient, after his no contest plea in Pleasanton. Jah admitted that he went over the waiver form with counsel and that Duvernay specifically explained he was giving up his right to litigate the motion to suppress, but Jah nonetheless understood from Duvernay that he would be able to pursue the motion later in Hayward. Jah initialed each of the boxes indicating that he understood he was giving up rights, but said he added the notation "UD" next to some of those boxes to indicate his consent was under duress. Jah said that he told three public defenders in Hayward that the "UD" stood for "under duress." He said, "the duress was that I felt that the video, um—the circumstances of the case was unique to where there wasn't sufficient evidence for me to enter a guilty plea and that the matter should have been dismissed based on the factual evidence that was available, as far as the probable cause, fabricating of the probable cause, the fabricating of the—of the police report saying that I was too incoherent to drive, um, the manipulation of the probable cause or the—the DUI of marijuana when the test results were never even presented to me before I entered a guilty plea." He had learned from "Law and Order or something like that" that the UD notation was "an effort to show to the Court or preserve the record that it was not . . . there was more to be said and I wasn't being heard."

Duvernay testified that Jah never indicated his plea was under duress. He viewed the video of Jah's field sobriety tests before the plea hearing and, after multiple conversations, advised Jah a motion to suppress based on the video might succeed but that he could not guarantee its success. Duvernay also advised Jah that a no contest plea would foreclose his ability to pursue a suppression motion. They also discussed the pros and cons of the prosecution's offer, which was low in light of the charge and Jah's prior felony conviction. Duvernay advised Jah that it was unusual for a felon with gun and drug charges to get a non-prison offer, and that the prosecutor might not offer the same deal after a preliminary hearing. He believed that Jah understood. Duvernay also explained that the prosecutor could file additional charges if Jah's drug screening results came back before the case was resolved. By settling the case that day, he obtained the prosecutor's promise that there would be no charges associated with the drug tests.

5

When attorney Cook started her argument on the motion to withdraw, Jah interrupted to have an off-record discussion with her. When argument resumed, Cook said she thought Jah "may have a motion for—analogous to a Marsden motion." Jah explained that he wanted Cook to call as a witness a woman who was with him at the plea hearing when he discussed the plea bargain with Duvernay. Jah said he did not know what the new witness would say "but I know she should be interviewed by my counsel to be able to present all the evidence possible." The court declined to continue the hearing.

Jah then said he wanted to withdraw his motion to withdraw his plea "to have this done in a different way to where all the evidence could be presented." The court said Jah could only withdraw his motion with prejudice. After additional discussion between Jah and counsel, Jah reiterated that he wanted to withdraw his plea, and asked that Cook be relieved of the representation. Cook indicated that she was appointed. Jah then said he wanted his entire case to be dismissed with prejudice "[b]ased on ineffective assistance of counsel and the civil rights violations that I was subjected to." He complained that Cook had never met with him outside of court, and again asked to withdraw his plea and for his case to be dismissed.

The court denied the motion. It explained its ruling as follows: "Mr. Duvernay testified today that at no time did you ever say to him you were entering your plea under duress. He—it never came to his attention in any way, shape, or form until after you were sentenced. From your testimony, I don't think that was contradicted at all." The court observed that the plea form gave no indication that Jah had entered his plea under duress. "Not every initial in the box is the same as every other, but I don't think anybody would have any lights going off that would indicate that this is being done under duress by looking at this form." The court specifically noted Duvernay's testimony that "you were informed that the motion was there to be done if you chose to do so; you were told that if you went ahead with the motion at the preliminary hearing—and there's a very good likelihood that something different in terms of punishment would be imposed if you were ever found guilty, and you understood these things. . . . And Mr. Duvernay said that with regard to that he could not guarantee the success of any motion."

6

The court concluded Jah had not shown good cause to withdraw his plea. "You had a good attorney representing you, giving you good advice. You made a decision, and after your sentence, after you came to—you didn't make your motion to withdraw your plea before your sentence. You waited until after you were sentenced in this courthouse to make your motion. . . . I don't find that Mr. Duvernay acted in a range that would single him out for being unreasonable in the advice that he gave or unprofessional. I don't find that he made any errors."

Jah filed a timely notice of appeal on September 23, 2014, but did not request a certificate of probable cause. On November 14, 2014, Cook submitted a request for a certificate of probable cause, stating as grounds that "there is evidence that [Jah] was operating under ignorance of a material fact as well as duress at the time that he entered his plea of no contest," "he was not advised by his counsel that he would lose his right to litigate this motion to suppres [sic] if he entered a plea of no contest," and he was "rushed through" the process of changing his plea. The trial court denied the request as untimely.

On December 20, 2014, Jah filed a petition for writ of mandate and/or habeas corpus asserting his no contest plea was unlawful and that he received ineffective assistance of counsel "at each stage of the trial court proceedings and with each court-appointed attorney." We granted Jah's request to consolidate the writ petition with his appeal.

DISCUSSION

Jah argues the trial court abused its discretion when it denied the motion to withdraw his plea. Although his argument is not completely clear, he apparently contends the court was required to permit him to withdraw his plea because he possessed evidence that would support a motion to suppress. He maintains: "Appellant presented a viable issue and his available evidence directly contradicted the claims of the deputy who stopped him. That issue should see the light of day and the dispute ought to be judicially resolved rather than swept under the rug." Jah also contends the court erroneously failed to explore what he calls a "de facto" *Marsden* motion.

7

The claims are barred because Jah failed to obtain a certificate of probable cause. With exceptions not pertinent here, Penal Code section 1237.5[3] provides that "No appeal shall be taken by the defendant from a judgment of conviction upon a plea of guilty or nolo contendere . . . except where both of the following are met: [¶] (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings. [¶]  (b) The trial court has executed and filed a certificate of probable cause for such appeal with the clerk of the court."  " 'The purpose and effect of section 1237.5 . . . are . . . to create a mechanism for trial court determination of whether an appeal raises any nonfrivolous cognizable issue, i.e., any nonfrivolous issue going to the legality of the proceedings.  Before the enactment of section 1237.5, the mere filing of a notice of appeal required preparation of a record and, in many cases, appointment of counsel; only after expenditure of those resources would an appellate court determine whether the appeal raised nonfrivolous issues that fell within the narrow bounds of cognizability.  Section 1237.5 was intended to remedy the unnecessary expenditure of judicial resources by preventing the prosecution of frivolous appeals challenging convictions on a plea of guilty.' " (*People v. Johnson* (2009) 47 Cal.4th 668, 676, italics omitted.)  It applies where, as here, the defendant appeals the denial of a motion to withdraw a guilty (or no contest) plea. (*Id.* at pp. 673, 679–680 [certificate of probable cause required for appeal premised on claim of ineffective assistance of trial counsel at motion to withdraw plea]; *People v. Ribero* (1971) 4 Cal.3d 55, 63.)

In such cases, both the notice of appeal and the statement required by section 1237.5 "must be filed within 60 days after the rendition of the judgment or the making of the order being appealed. "  (Cal. Rules of Court, rules 8.308(a).)  Otherwise, the appeal will be inoperative.  (Cal. Rules of Court, rules 8.308(a), 8.304(b); see *People v. Mendez* (1999) 19 Cal.4th 1084, 1095, 1099; *cf. Drake v. Superior Court* (2009) 175 Cal.App.4th 1462 [request for certificate of probable cause filed after notice of appeal but within 60

_____

[3] Further statutory references are to the Penal Code.

days of judgment was timely filed].) Moreover, "[a] defendant who challenges the validity of such a plea on the ground that trial counsel rendered ineffective assistance in advice regarding the plea may not circumvent the requirements of section 1237.5 by seeking a writ of habeas corpus." (*In re Chavez* (2003) 30 Cal.4th 643, 651.)

Here, Jah requested a certificate of probable cause on November 14, 2014, more than 60 days after the July 25 ruling on the motion to withdraw his plea. The trial court properly denied it as untimely. Jah urges us to broadly construe a declaration he filed in pro per on September 24, 2014, as a request for a certificate of probable cause, but that declaration was also filed beyond the permissible 60 day period. His further suggestion that a request for a certificate of probable cause included in his October 3, *2013* pro se filing satisfied section 1237.5 is also unavailing. It was filed long before the July 25, 2014 ruling and thus was not filed "within 60 days after the rendition of the judgment or the making of the order being appealed." (Cal. Rules of Court, rule 8.308(a).) Finally, Jah's reliance on the constructive filing doctrine is unavailing because he was not incarcerated during the time permitted for requesting a certificate of probable cause. (See *In re Benoit* (1973) 10 Cal.3d 72, 86–87 [principle of constructive filing applies only to incarcerated appellants]; see also *In re Chavez, supra,* 30 Cal. 4th at p. 653 [timely filing of a statement of reasonable grounds for appeal may no more be excused than the timely filing of a notice of appeal].)

We are also unpersuaded that trial counsel's failure to timely request a certificate of probable cause was ineffective assistance of counsel warranting reversal, as asserted in Jah's petition for writ of mandate and/or habeas corpus.[4] To prevail on this claim, Jah would have to show both that attorney Cook's performance fell below an objective standard of reasonableness under prevailing professional norms and a reasonable probability that the court would have issued the certificate but for the tardy filing. (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688, 691–692; *People v. Carter*

---

[4] Although not strictly necessary in light of our order consolidating the two proceedings, we grant the request for judicial notice of the appellate record made in the petition.

9

(2003) 30 Cal.4th 1166, 1211.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington, supra*, 466 U.S. 668 at p. 694.)

There is no reasonable probability the court would have issued a certificate of probable cause. "[T]he requirement of a certificate of probable cause serves as a mechanism for the trial court to determine whether there is a legitimate basis for the appeal." (*People v. Arriaga* (2014) 58 Cal.4th 950, 958–959.) Jah's untimely request identified as bases for a proposed appeal that "there is evidence that he was operating under ignorance of a material fact as well as duress," that "he had a colorable motion to suppress and that he was not advised by his counsel that he would lose his right to litigate this motion to suppress" if he pleaded, and that he was "rushed through" the process of changing his plea. But the trial court rejected those assertions on the basis of compelling evidence that Jah was ably represented and advised by trial counsel as to the consequences and relative merits of pursuing a motion to suppress or, alternatively, accepting the prosecution's plea offer. The court's ruling was largely based on its assessment of witness credibility—specifically, Jah's and Duvernay's—which cannot be reassessed on appeal. Aside from Jah's testimony, which the court did not credit, the record provides no support for his claims of duress or that he was misadvised about the viability of a suppression motion. (See, e.g., *People v. Waxler* (2014) 224 Cal.App.4th 712 [probable cause established by officer's view and smell of burnt marijuana in the defendant's automobile, despite the defendant's possession of medical marijuana prescription]; *People v. Strasburg* (2007) 148 Cal.App.4th 1052, 1059–1060 [odor of marijuana established probable cause to search car].) Moreover, the record reveals a factual basis for Jah's plea, there was no objection to the absence of an express finding to that effect (see *People v. Holmes* (2004) 32 Cal.4th 432, 442–443; *People v. Coulter* (2008) 163 Cal.App.4th 1117, 1122), and there is no claim or indication that the court failed to give any required advisements at the plea hearing.

In short, Jah has failed to propose any non-frivolous ground for appeal such that, to a reasonable probability, the trial court would have issued a certificate of probable

cause if counsel had timely requested one. "The purpose of section 1237.5—in all its variously amended forms—is to weed out frivolous or meritless appeals. [Citation.] From time to time, perhaps more or less wisely, courts proceed to the merits of a purported appeal simply to discourage any subsequent petition for habeas corpus based upon ineffective assistance of counsel, especially if counsel can be blamed for failing to obtain the certificate or the appellate issue goes to the competence of trial counsel. [Citations.] We resist the temptation to do so. [Citations.]" (*People v. Manriquez* (1993) 18 Cal.App.4th 1167, 1171 (footnote omitted); see *People v. Zamora* (1991) 230 Cal.App.3d 1627, 1634; *People v. Ballard* (1985) 174 Cal.App.3d 982, 988.)

## DISPOSITION

The petition for writ of mandate and/or habeas corpus is denied. The appeal is dismissed.

_____
Siggins, J.

We concur:

_____
Pollak, Acting P.J.

_____
Jenkins, J.

11