Filed 10/3/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D073740 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. SCD273095) |
| BRANDON LANCE LEE, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Margie G. Woods, Judge.  Affirmed.

Summer Stephan, District Attorney, Mark A. Amador, Linh Lam, Christine Bannon and Anne Spitzberg, Deputy District Attorneys, for Plaintiff and Appellant.

Sandra Gillies, under appointment by the Court of Appeal, for Defendant and Respondent.

Following a traffic stop, officers searched Brandon Lance Lee's car without a warrant and discovered 56 grams of cocaine, a firearm, and other items associated with selling narcotics. After Lee was charged with various drug and weapons offenses, he filed a motion to suppress the evidence obtained from the warrantless vehicle search. The trial court granted Lee's motion, rejecting the People's contentions that the search was proper under the automobile exception as supported by probable cause or, alternatively, as an inventory search of a vehicle following an impound. Reviewing that order, we rely on the trial court's express and implied factual findings, provided they are supported by substantial evidence, to independently determine whether the search was constitutional.

In evaluating the People's reliance on the automobile exception to the warrant requirement, we weigh the totality of the circumstances to determine whether officers had probable cause to search Lee's car. Our analysis, like that of the trial court, does not overlook the small, permissible amount of marijuana found in Lee's pocket. But following the legalization of marijuana in 2016, California law now expressly provides that legal cannabis and related products "are not contraband" and their possession and/or use "shall not constitute the basis for detention, search, or arrest." (Health & Saf. Code, § 11362.1, subd. (c).) As a result, the trial court properly concluded that Lee's possession of a small amount of marijuana was of little relevance in assessing probable cause. Because the other factors relied on by the People were also of minimal significance, we conclude that even considering the totality of circumstances known to the officer there

2

did not exist " ' "a fair probability that contraband or evidence of a crime will be found." ' " (*Alabama v. White* (1990) 496 U.S. 325, 330 (*Alabama*).)

We likewise find no error in the trial court's conclusion that the search was not valid as an inventory search. The search here served no community caretaking function. And based on the manner in which the search was conducted and the statements of the officer to Lee and his passenger, the trial court reasonably found that the primary purpose of the search was *not* to inventory the contents of Lee's car, but rather to investigate Lee for possible criminal behavior.

We therefore affirm the order granting Lee's motion to suppress the evidence obtained from the unlawful search of his car.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

A.     *The Traffic Stop and Subsequent Search*

One evening in August 2017, Officers Carlos Robles and Thomas Cooper of the San Diego Police Department observed a gold-colored Cadillac DeVille with no front license plate and tinted windows in possible violation of Vehicle Code section 26708. They initiated a traffic stop and parked their vehicle near the Cadillac outside an apartment complex. Cooper approached the passenger side to speak with the front seat passenger, Michael H.[2] Robles walked to the driver's window and asked the driver,

---

[1]     A substantial part of the factual background is based on video evidence provided by a body camera worn by Officer Robles.

[2]     Lee and Michael H. were the only individuals in the car. We refer to Lee's passenger by his first name and last initial, intending no disrespect.

defendant Lee, for his driver's license. Lee said he did not have his license with him. Robles instructed Lee to step out of the vehicle and performed a pat-down search to confirm he did not have any sort of identification.

During this search, Officer Robles discovered a bag containing a small amount of marijuana and a wad of cash in Lee's pocket.[3] Robles asked if he delivered medical marijuana; Lee replied, "Yes sir." Robles started to handcuff Lee when, according to Robles, Lee "tensed up." Lee then leaned back into the car and said something to Michael.[4] Robles then walked Lee to his patrol car and placed him in the back seat. Lee told Robles the Cadillac belonged to him and provided his name and date of birth.[5]

Cooper ran the two individuals' names while Robles spoke with Michael. Robles asked what happened to the money he had previously seen on the Cadillac's center console. Michael showed it to Robles and flipped through the bills, counting ten dollars in total. Cooper's searches revealed that Lee's license was suspended and Michael did not have a license. In addition, Michael had been arrested in the past for making criminal

---

[3]    The amount of cash in Lee's pocket was later determined to be between $100 to $200 in U.S. bills. The audio from Robles's body worn camera suggests it was in $1 and $5 denominations, but the testimony of investigating officer Detective Steven Skinner at the preliminary hearing states the money found was in $5, $10, and $20 denominations. It is unclear whether Detective Skinner was referring to all the money found during the pat-down search and subsequent vehicle search or only to cash later found in the vehicle. The record does not indicate how much money was found in the vehicle.

[4]    Robles thought he heard something about a "bag." Lee and Michael told Robles later that when Lee leaned into the car, he had asked Michael to grab Lee's phone.

[5]    It was later determined that the car was not owned by Lee.

4

threats. Robles instructed Michael to exit the car to be placed in handcuffs. He explained that Michael would be free to leave if nothing was found during the vehicle search.

Officer Robles then spoke with Lee about his suspended license. Lee stated he knew his license had been suspended and explained it was the result of a failure to appear in court. Robles asked Lee if there was anything illegal in the car, and Lee told him there was not. Robles asked again and told him he was going to search the car because it was being impounded due to his suspended license.[6] Lee offered to have someone come pick up the car for him, but Robles told him, "That's not going to work." Robles asked Lee a third time if there was anything illegal in the car, and Lee again responded no. Lee began to ask if he could grab something from the car, and Robles told Lee he could take whatever he needed after the search confirmed there was nothing illegal in the car.

Robles began to search the Cadillac, starting with the front passenger seat. He examined the space between the seat and the center console, then under the seat. He attempted to access the glovebox, but it was locked. He opened both compartments of the center console and examined several items inside. He activated the screen of a cell phone sitting next to the center console.

---

[6] The California Vehicle Code permits an officer to impound a car when a person is found to be driving with a suspended license. (Veh. Code, § 14602.6, subd. (a)(1) [officer may immediately arrest a person found driving with a suspended license and cause the removal and seizure of the vehicle]; Veh. Code, § 22651, subd. (p) [officer may remove a vehicle "[i]f the peace officer issues the driver of [the] vehicle a notice to appear for violation of [Veh. Code] Section 12500" which requires a person to have a valid driver's license to drive upon a highway].) Lee was neither arrested nor issued a citation for driving with a suspended license.

5

Moving to the backseat, Robles pulled the bench seat up and used a flashlight to examine the space underneath. After he returned the seat to a resting position, he pulled down the center backseat armrest and discovered it provided access to the trunk. A black backpack sitting in the trunk became visible once the armrest had been pulled down. Robles took the backpack out of the trunk. He found a firearm in the backpack's main compartment and a large sum of money in its front pocket.

Robles returned to his patrol car and twice asked Lee if there was anything in the Cadillac he needed to discuss with the officers. Lee said no both times. Robles also asked Michael if he knew about anything illegal in the car, and Michael said he did not. Robles continued searching the car, looking under the driver's side seat and the driver's side floormat. He examined the space between the center console and the driver's side seat. He briefly searched the backseat area once more, including the back pocket of the driver's seat.

Robles again returned to his patrol car and had Lee step out and face the vehicle. He searched Lee's person for the keys to the glovebox and, not finding them, ultimately requested and retrieved them from Michael. Using the key to open the glovebox, he found inside a white envelope with two egg-sized plastic baggies containing a white powdery substance. The substance was later determined to be about 56 grams, or two ounces, of cocaine. He also found more small plastic baggies, a kitchen knife, and a small glass container. A further search of the vehicle revealed several small digital scales.

Robles did not fill out the impound form (ARJIS-11) at the scene when he performed his search as he did not have a copy of the form with him. This form was filled out by another officer, who conducted his own search of the Cadillac at a later time after it was impounded. Robles did not assist with filling out the form.

The San Diego County District Attorney charged Lee with transportation of cocaine not for personal use while armed with a firearm (Health & Saf. Code, § 11352, subd. (a);[7] Pen. Code, §§ 1210, subd. (a), 12022, subd. (c), count 1); possession for sale of cocaine weighing more than 28.5 grams while armed with a firearm (Health & Saf. Code, § 11351; Pen. Code, §§ 1203.073, subd. (b)(1), 12022, subd. (c), count 2); having a concealed firearm in a vehicle (Pen. Code, § 25400, subd. (a)(1), count 3); and possession of a large-capacity magazine (Pen. Code, § 32310, subd. (c), count 4).

B.    *Lee's Suppression Motion*

After the preliminary hearing, Lee filed a motion to suppress the evidence obtained during the search of his car, claiming it was obtained in violation of the Fourth Amendment. (U.S. Const., 4th Amend.) The People argued the search was permitted as an inventory search, or alternatively that there was probable cause to search the vehicle. At the motion hearing, Officer Robles testified he performed an inventory search as part of his impounding the Cadillac. When pressed why he searched unusual places such as underneath the back seat, he said that in his experience people commonly keep valuables or hide illegal items there. Robles acknowledged that the small bag of marijuana in Lee's

---

[7]    Subsequent statutory references are to the Health & Safety Code, unless otherwise noted. We continue to refer to the code by name as appropriate for clarity.

pocket contained an amount consistent with personal use and was not illegal on its own. And he agreed that the money in Lee's pockets combined with the legal amount of marijuana was not evidence of a crime. As Robles further explained, he asked Lee if he was involved in medical marijuana delivery because several illegal delivery services had recently emerged.

The trial court granted Lee's motion to suppress, concluding that although the initial traffic stop was lawful, the subsequent vehicle search was not an inventory search, not one incident to arrest, and not supported by probable cause. The court found that the manner in which Officer Robles searched the vehicle and his repeated questions to Lee about anything illegal inside indicated the primary purpose of the search was to investigate, not to inventory the vehicle's contents or serve a community caretaking function. That Robles did not fill out the required ARJIS-11 form or assist the officer who ultimately did was additional indication that the purpose of the search was not to inventory the contents of the vehicle.

The court further concluded that the $100 to $200 in cash on Lee's person, the small bag of legal marijuana, Lee's acknowledgement of delivering medical marijuana, and his "tensing up" did not provide probable cause to search the vehicle. It questioned Robles's credibility, finding his testimony "less convincing." In a later proceeding, the People announced they could not move forward, and the court dismissed the case on its own motion.

DISCUSSION

The People appeal the grant of Lee's motion to suppress the evidence obtained during Officer Robles's search of the Cadillac. As they did below, they contend the search was valid because there was probable cause to believe the car contained contraband. In the alternative, they claim the search was a proper inventory search in the course of impounding the vehicle.

A. *Standard of Review*

In reviewing a trial court's decision to grant a motion to suppress evidence, we rely on the trial court's express and implied factual findings, provided they are supported by substantial evidence, to independently determine whether the search was constitutional. (See *People v. Brown* (2015) 61 Cal.4th 968, 975.) "Thus, while we ultimately exercise our independent judgment to determine the constitutional propriety of a search or seizure, we do so within the context of historical facts determined by the trial court." (*People v. Tully* (2012) 54 Cal.4th 952, 979.) It is the trial court's role to evaluate witness credibility, resolve conflicts in the testimony, weigh the evidence, and draw factual inferences. (*Ibid.*) We review those factual findings under the deferential substantial evidence standard, considering the evidence in the light most favorable to the trial court's order. (*Ibid.*)

B. *Automobile Searches and the Fourth Amendment*

A warrantless search is unlawful under the Fourth Amendment "unless it falls within one of the 'specifically established and well-delineated exceptions.' " (*People v. Woods* (1999) 21 Cal.4th 668, 674; see also *Arizona v. Gant* (2009) 556 U.S. 332, 338.)

9

Automobiles are the subject of special exceptions, and warrantless searches of automobiles "have been upheld in circumstances in which a search of a home or office would not." (*South Dakota v. Opperman* (1976) 428 U.S. 364, 367 (*Opperman*).) These broader exceptions from the Fourth Amendment's general prohibition against warrantless searches derive from the inherent mobility of automobiles and a diminished expectation of privacy given the public nature of automobile travel. (*Id.* at pp. 367–368.) The two exceptions relevant here include (1) a search of any area of the automobile where there is probable cause to believe evidence of a crime or contraband may be found, generally referred to as the "automobile exception" (*People v. Evans* (2011) 200 Cal.App.4th 735, 753 (*Evans*)), and (2) an inventory search conducted in the course of impounding an automobile (see e.g., *People v. Torres* (2010) 188 Cal.App.4th 775, 786 (*Torres*)).

We conclude the vehicle search in this case does not fall within either of these exceptions. As to the first—the automobile exception— the facts known to Officer Robles at the time he removed the occupants were insufficient to establish probable cause to search the Cadillac. The recent legalization of marijuana in California means we can now attach fairly minimal significance to the presence of a legal amount of the drug on Lee's person, and the remaining facts cited by the People do not provide any reasonable basis to believe contraband would be found in the car. As to the second, the inventory search exception does not apply because no community caretaking function was served by impounding the Cadillac, and the trial court reasonably found that Robles's primary motive was to investigate, not inventory, the vehicle's contents. Because the search was neither supported by probable cause nor constituted a proper inventory search, it was

10

constitutionally unreasonable and the trial court properly granted Lee's motion to suppress.

      1.      *Officer Robles Did Not Have Probable Cause to Search Lee's Vehicle.*

The People argue that the search of Lee's car was proper under the automobile exception to the warrant requirement. Under this exception, "police who have probable cause to believe a lawfully stopped vehicle contains evidence of criminal activity or contraband may conduct a warrantless search of any area of the vehicle in which the evidence might be found." (*Evans*, *supra*, 200 Cal.App.4th at p.753; see also *U.S. v. Ross* (1982) 456 U.S. 798, 821.) A probable cause inquiry relies on an objective standard; we do not consider an officer's subjective beliefs. (*Evans*, at p. 753.)

Probable cause is a more demanding standard than mere reasonable suspicion. (*People v. Souza* (1994) 9 Cal.4th 224, 230–231.) It exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found . . . ." (*Ornelas v. U.S.* (1996) 517 U.S. 690, 696.) In determining whether a reasonable officer would have probable cause to search, we consider the totality of the circumstances. (See *Illinois v. Gates* (1983) 462 U.S. 213, 238.)

The People rely on several factors they contend, taken together, establish probable cause to believe evidence of illegal activity would be found in the vehicle. These include: (1) the marijuana in Lee's pocket; (2) Lee's affirmative response when Officer Robles asked if he delivered medical marijuana; (3) the "wadded-up" $100 to $200 cash in his pocket; (4) the additional $10 in cash in the center console; and (5) the manner in

11

which Lee "tensed" as Robles handcuffed him and led him to the patrol car. They emphasize the marijuana found, arguing that cases like *People v. Mower* (2002) 28 Cal.4th 457 (*Mower*) and *People v. Strasburg* (2007) 148 Cal.App.4th 1052 (*Strasburg*) stand for the proposition that possession of a legal amount of marijuana does not deprive police "of the capacity to entertain a suspicion of criminal conduct."

If by this argument the People mean simply that possession of a small (legal) amount of marijuana does not foreclose the possibility that defendant possesses a larger (illegal) amount, they are obviously correct. But there must be evidence—that is, *additional* evidence beyond the mere possession of a legal amount—that would cause a reasonable person to believe the defendant has more marijuana. And it would be incorrect to say that California's legalization of marijuana is of no relevance in assessing whether there is probable cause to search a vehicle in which police find a small and legal amount of the drug. To understand the significance of California's legalization of marijuana to the suppression motion here, we must construe the relevant cases in their historical context.

California transitioned to legalized marijuana in stages, from (1) total illegality to (2) permitted medical use to (3) decriminalization to (4) recreational legalization. Prior to 1996, any possession or use of marijuana was illegal. But in November 1996, voters approved a ballot initiative—Proposition 215, the Compassionate Use Act (Act)—which added section 11362.5 to the Health and Safety Code. (*Strasburg*, *supra*, 148 Cal.App.4th at pp. 1052, 1057; see § 11362.5.) This Act allowed individuals suffering from an illness to obtain and use marijuana for medical purposes with a physician's

12

recommendation. (*Strasburg*, at p. 1057.) These individuals, as well as their primary caregivers, were immune from criminal prosecution or sanction. (*Ibid.*)

*Strasburg* would become the leading case on how the Act impacted probable cause for vehicle searches where marijuana is found. In *Strasburg*, an officer walked up to the defendant's car and noticed the odor of marijuana. (*Strasburg*, *supra*, 148 Cal.App.4th at p. 1055.) The defendant admitted he had just been smoking marijuana in his car. When asked if he had any marijuana with him, he handed the officer a Ziploc bag containing about three-quarters of an ounce of marijuana. (*Ibid.*) The officer also noticed another small amount of marijuana, about 2.2 grams, in the car. (*Ibid.*) The defendant repeatedly asserted that he had a medical marijuana card, but the officer declined to view it. (*Id.* at pp. 1055–1056.) The defendant was detained, the car was searched, and the officer discovered 23 ounces of marijuana and a large scale. (*Id.* at p. 1056.)

The appellate court upheld the denial of the defendant's motion to suppress. (*Strasburg*, *supra*, 148 Cal.App.4th at p. 1060.) The odor of marijuana, the defendant's admission he had just been smoking it, and the quantities of marijuana provided to the officer and observed in the vehicle prior to the search constituted probable cause to believe the defendant's vehicle contained additional (illegal) amounts of the substance. (*Id.* at p. 1059.) The court rejected the defendant's argument that his medical marijuana prescription negated the existence of probable cause to search his car. (*Id.* at pp. 1059–1060.) It relied on *Mower*, *supra*, 28 Cal.4th 457, which held that status as a qualified patient under medical marijuana laws provides only limited immunity from prosecution in the form of an affirmative defense, not immunity from arrest. (*Strasburg*,

13

at p. 1058.)  Accordingly, a defendant's medical marijuana prescription and current medical marijuana laws could provide limited immunity but "not a shield from reasonable investigation" that would affect the officer's probable cause to search the car. (*Id.* at p. 1060.)

Three years after *Strasburg*, the governor signed Senate Bill No. 1449 decriminalizing marijuana possession.  (Stats. 2010, ch. 708, §§ 1−2.)  By amending section 11357 of the Health and Safety Code and section 23222 of the Vehicle Code, this legislation converted possession of up to one ounce of marijuana, including while driving, from a misdemeanor to an infraction.  (Stats. 2010, ch. 708, §§ 1−2.)  *People v. Waxler* (2014) 224 Cal.App.4th 712 (*Waxler*) addressed how this decriminalization would affect probable cause determinations for vehicle searches.

As the officer in *Waxler* approached the defendant's truck "he smelled 'the odor of burnt marijuana' and 'saw a marijuana pipe with . . . what appeared to be burnt marijuana in the bowl.' "  (*Waxler*, *supra*, 224 Cal.App.4th at p. 716.)  Searching the truck, the officer found methamphetamine and a methamphetamine pipe.  (*Ibid.*)  The appellate court affirmed the trial court's denial of the defendant's motion to suppress evidence seized from his truck.  (*Ibid.*)  It held that the officer had probable cause to search the truck based on the odor of marijuana and his observation of burnt marijuana, noting that under *Strasburg*, "the odor of marijuana justifies the warrantless search of an automobile."  (*Id.* at pp. 719, 721.)  Despite the intervening decriminalization of marijuana after *Strasburg*, the court reasoned that "[o]ther than certain quantities of medical marijuana, possession of *any* amount of marijuana . . . is illegal in California and

14

is therefore 'contraband.' " (*Id.* at p. 721, italics added.)  "Thus, a law enforcement officer may conduct a warrantless search of a vehicle pursuant to the automobile exception when the officer has probable cause to believe the vehicle contains marijuana, which is contraband." (*Ibid.*)

While *Waxler* was the leading case addressing probable cause to search a vehicle following the decriminalization of marijuana, it does little to help resolve similar issues following recreational *legalization*.  With the passage of Proposition 64 by voters in 2016, California law now permits adults 21 years of age and older to legally possess up to 28.5 grams, or about one ounce, of marijuana.  (§ 11362.1, subd. (a)(1).)  Critically, the statute expressly provides that "[c]annabis and cannabis products involved in any way with conduct deemed lawful by this section are not contraband nor subject to seizure, *and no conduct deemed lawful by this section shall constitute the basis for detention*, *search*, *or arrest*." (§ 11362.1, subd. (c), italics added.)  *Waxler* relied heavily on the fact that any amount of nonmedical marijuana remained *contraband* despite the change in the law reducing possession of up to one ounce from a misdemeanor to an infraction.  But following legalization, California law now specifically states that up to one ounce of marijuana possessed by an adult age 21 or over is *not* contraband.  Accordingly, *Waxler* does not help us determine whether or to what extent legally possessed marijuana now affects whether there is probable cause to search a vehicle.

The 2016 amendments to the Health and Safety Code similarly appear to undercut much of *Strasburg*'s probable cause analysis.  The *Strasburg* court held that the odor and sight of less than one ounce of marijuana provided police with probable cause to search

15

the defendant's vehicle.  (*Strasburg*, *supra*, 148 Cal.App.4th at p. 1059.)  Yet section 11362.1, subdivision (c) now specifically states that lawful conduct involving marijuana—including possession of up to one ounce—shall not form the basis for a search.

Arguing that *Strasburg* and *Waxler* remain good law, the People urge us to follow *People v. Fews* (2018) 27 Cal.App.5th 553 (*Fews*), a case we find readily distinguishable. In *Fews*, officers initiated a traffic stop of a car near an area of San Francisco known for drug sales and drug-related violence.  (*Id.* at p. 557.)  The driver quickly got out of the vehicle and reached through the open door to retrieve some items.  Defendant, the passenger, remained seated but was seen "making 'furtive movements.' "  (*Ibid.*)  When officers approached the driver, they noticed the odor of marijuana and saw a half-burnt cigar in the driver's hands that he confirmed contained marijuana.  (*Ibid.*)  The officers searched both the driver and the defendant, as well as the vehicle, and discovered a firearm in the defendant's pocket.  (*Id.* at p. 558.)

Affirming the denial of the defendant's suppression motion, the *Fews* court found "no compelling reason to depart from *Strasburg* and *Waxler*" on the facts presented. (*Fews*, *supra*, 27 Cal.App.5th at p. 562.)  It rejected the defendant's argument that the legalization of marijuana meant it was no longer contraband.  (*Id.* at p. 563.)  As the court explained, Health and Safety Code, section 11362.1, subdivision (c) only applies to conduct deemed *lawful* under that section, which does not include "[d]riving a motor vehicle on public highways under the influence of any drug (see Veh. Code, § 23152, subd. (f)) or while in possession of an open container of marijuana (Veh. Code, § 23222,

16

subd. (b)(1) . . . ." (*Fews*, at p. 563.) Testimony that the officers smelled recently burned marijuana and saw a half-burnt cigar containing marijuana supported a reasonable inference that the driver was illegally operating a vehicle under the influence of marijuana or, at the very least, driving while in possession of an open container of marijuana. Because neither would be *lawful* under section 11362.1, the defendant could not rely on the "not contraband" designation of section 11362.2, subdivision (c) to avoid the holding in *Waxler*. (*Fews*, at p. 563.)

Whatever the merits of the *Fews* analysis,[8] the facts here present a very different scenario. Officer Robles did not smell the odor of burnt marijuana—suggesting the possibility of driving under the influence—and there was no evidence of marijuana in an open container in Lee's car. Indeed, Robles conceded there was nothing illegal about the small amount of marijuana in Lee's pocket. As such, the reasoning used by *Fews* to rely on *Strasburg* and *Waxler* does not apply. In addition, the other factors surrounding the *Fews* search, such as the locale, odd behavior of the driver, and "furtive movements" of the defendant provided a much stronger basis for probable cause than the facts surrounding Officer Robles's search of the Cadillac.

Consistent with the directive of section 11362.1, subdivision (c), Lee's possession of a small and legal amount of marijuana provides scant support for an inference that his car contained contraband. The other evidence relied on by the People adds little to the

---

8 There may be an analytic difference between evidence of illegal activity— impaired driving or violation of the open container law—and whether that evidence suggests that contraband will be found in the vehicle, which is the critical issue in establishing probable cause to conduct a search.

17

calculus.  Like his possession of a legal amount of marijuana, Lee's admission that he delivers medical marijuana is not particularly significant in the absence of evidence that his delivery business was illegal.  The cash found in Lee's pocket and in the center console of the car might be of significance if it suggested illegal drug sales.  But we do not know exact amount or the denominations of the bills—only that the total was between $100 and $200 and that the denominations may have included $1, $5, $10, and $20 bills.  Finally, Officer Robles's testimony that Lee "tensed up" as he was handcuffed hardly seems an unusual reaction for someone being detained and escorted to the back of a police car.  More significantly, the trial judge questioned Robles's credibility, and we are bound to draw all reasonable inferences in support of the court's order granting the suppression motion.[9]

Considering the facts in the light most favorable to the court's order, even the totality of the circumstances falls well short of establishing probable cause to search the Cadillac.  Those circumstances simply were not enough to support the " 'fair probability

---

[9]    The People acknowledge that the trial court questioned Robles's "veracity" based on his "inconsistent statements" and being "impeached in certain part of his testimony."  But they maintain the court made no "specific" or "material factual findings regarding his testimony."  The argument misses the point.  Our deference to the trial court's resolution of factual questions extends not merely to specific or express factual findings, but to implied findings as well.  (*People v. Woods* (1999) 21 Cal.4th 668, 673.)  It was for that court to listen to Robles's testimony about Lee "tensing up," judge his credibility, and draw whatever reasonable inferences it chose to from the statement.  (See *People v. Lawler* (1973) 9 Cal.3d 156, 160.)  We are left to resolve all factual conflicts in a manner most favorable to and supportive of the trial court's decision to grant the motion to suppress.  (See *People v. Martin* (1973) 9 Cal.3d 687, 692.)

18

that contraband or evidence of a crime will be found.' " (*Alabama*, *supra*, 496 U.S. at p. 330.)

2.      *Officer Robles Did Not Conduct a Valid Inventory Search.*

Inventory searches are a well-defined exception to the Fourth Amendment's warrant requirement. (*Colorado v. Bertine* (1987) 479 U.S. 367, 371.) When a vehicle is impounded or otherwise in lawful police custody, an officer may conduct a warrantless search aimed at securing or protecting the vehicle and its contents. (*Opperman*, *supra*, 428 U.S. at p. 373.) "The policies behind the warrant requirement are not implicated in an inventory search [citation], nor is the related concept of probable cause." (*Colorado v. Bertine*, at p. 371.)

To determine whether a warrantless search is properly characterized as an inventory search, "we focus on the purpose of the impound rather than the purpose of the inventory." (*People v. Aguilar* (1991) 228 Cal.App.3d 1049, 1053 (*Aguilar*).) "The decision to impound the vehicle must be justified by a community caretaking function 'other than suspicion of evidence of criminal activity' [citation] because inventory searches are 'conducted in the absence of probable cause' [citation]." (*Torres*, *supra*, 188 Cal.App.4th at p. 787.) For example, impounding serves a community caretaking function when a vehicle is parked illegally, blocks traffic or passage, or stands at risk of theft or vandalism. (*Id.* at p. 790; *People v. Williams* (2006) 145 Cal.App.4th 756, 762–763 (*Williams*).) Also relevant to the caretaking inquiry is whether someone other than the defendant could remove the car to a safe location. (*Torres*, at p. 790.)

19

The absence of a proper community caretaking function suggests an impound is a pretext to investigate without probable cause, a purpose which is inconsistent with an inventory search. (*Torres*, *supra*, 188 Cal.App.4th at p. 788.) Officers may not use an inventory search as "a ruse for a general rummaging in order to discover incriminating evidence." (*Florida v. Wells* (1990) 495 U.S. 1, 4.) Unlike the probable cause determination, which rests solely on an objective standard, the inventory search exception evaluates both the objective reasonableness of the impound decision and the subjective intent of the impounding officer to determine whether the decision to impound was "motivated by an improper investigatory purpose." (*Torres*, at p. 791.) Such purpose renders a decision to impound and the subsequent inventory search unlawful under the Fourth Amendment. (*Aguilar*, *supra*, 228 Cal.App.3d at p. 1053.)

Officer Robles's search of the Cadillac is similar to the search in *Torres*. There, a deputy searched the defendant's person following a traffic stop after he admitted not having a driver's license. (*Torres*, *supra*, 188 Cal.App.4th at p. 780.) This search yielded four cell phones and $965. (*Ibid.*) At that point the deputy decided to impound the defendant's truck and soon after performed a search in which he discovered 12 ounces of methamphetamine and evidence of sales. (*Ibid.*) The deputy conceded "he had decided to impound the truck 'in order to facilitate an inventory search' " and that he was not the one who had filled out the required inventory search form. (*Id.* at pp. 781, 782.) The appellate court found the impound decision and subsequent inventory search unreasonable and reversed the trial court's denial of the defendant's motion to set aside the information. (*Id.* at pp. 789, 793.) This conclusion turned on the apparent

20

investigatory motive of the deputy and the absence of a community caretaking function for impounding the vehicle; "[t]he prosecution failed to show the truck was illegally parked, at an enhanced risk of vandalism, impeding traffic or pedestrians, or could not be driven away by someone other than defendant." (*Id.* at pp. 789–790.)

Like the prosecution in *Torres*, the People here failed to show that the decision to impound Lee's car served any sort of community caretaking function. The car was parked in or alongside an apartment complex. It was not blocking a roadway, the sidewalk, or a driveway.[10] Although both Lee and his passenger were unable to drive the car (as neither had a valid license), Lee offered to have someone else come pick it up so it would not need to be impounded. Robles rejected the offer without explanation, saying simply, "That's not going to work." On these facts, the trial court properly concluded that the impound served no community caretaking function.

In addition, ample evidence supports the trial court's finding that the impound and purported inventory search were a pretext to look for incriminating evidence. Robles repeatedly asked Lee and passenger Michael if there was anything *illegal* in the car, as opposed to whether there were valuables or other items in the car he needed to inventory. Robles told Michael he would be released and free to go if nothing *illegal* was found in

---

[10] In their opening brief the People claimed there was a sign visible in the video footage suggesting that Lee's Cadillac was improperly parked in a private parking lot. In their reply brief, however, they concede no such sign is visible. Moreover, Officer Robles never testified this was a reason he decided to impound the vehicle, and it would in any event not explain Robles's refusal to allow Lee to arrange for someone to pick up the car.

21

the car. And he denied Lee's request to remove some of his personal belongings before the car was searched.

Video from Robles's body-worn camera supports the inference that his motive was to investigate criminal activity, not protect private property. Rather than search areas where someone might normally keep valuables, he examined places where illegal items might be stashed, such as the underside of the back seat. Robles's testimony that in his experience people often keep valuables in such places does not change our view that the typical person does not. More importantly, the trial judge questioned Robles's veracity and Robles admitted that he searched underneath the back seat because it is a common place to hide illegal items. In their totality, these facts provide substantial evidence to support the trial court's finding that the focus of Robles's search was finding incriminating evidence.[11] This motivation is inconsistent with an inventory search. (*Torres*, *supra*, 188 Cal.App.4th at p. 789.)

The People point to Vehicle Code provisions (*ante*, fn. 6) and local police procedures as authorizing Robles to impound Lee's vehicle and conduct an inventory search. But the fact that an inventory search is *authorized* is not determinative of the search's constitutionality. Indeed, "[i]nventory search jurisprudence *presumes* some objectively reasonable basis supports the impounding." (*Torres*, *supra*, 188 Cal.App.4th

---

[11] We also note that Robles did not fill out or have with him the impound inventory ARJIS-11 form when he conducted the search of Lee's car. Nor did he assist the officer who later performed an inventory search and filled out the required form. These facts further suggest that the motivation behind Robles's search was to investigate, not to inventory. (See *People v. Wallace* (2017) 15 Cal.App.5th 82, 92–93.)

22

at p. 791.)  Thus, "statutory authorization does not, in and of itself, determine the constitutional reasonableness of the seizure."  (*Williams*, *supra*, 145 Cal.App.4th at p. 762; *id.* at pp. 762−763 [while officer had statutory authority to impound defendant's vehicle, the impound served no community caretaking function where the car was parked legally by the curb in a residential area and was not blocking traffic or access; therefore, officer's vehicle search was unconstitutional].)  Although Robles had statutory authority to impound Lee's car after apprehending him for driving on a suspended license (see Veh. Code, §§ 14602.6, subd. (a)(1), 22651, subd. (p)), that does not automatically render any impound and subsequent inventory search constitutionally proper.  Substantial evidence supports the trial court's finding that Robles's decision to impound Lee's vehicle served no valid community caretaking function.  We accordingly conclude that the search of Lee's vehicle cannot be justified by the inventory search exception to the Fourth Amendment's warrant requirement.

DISPOSITION

The order granting Lee's motion to suppress evidence obtained from the unconstitutional search of his car is affirmed.

DATO, J.

WE CONCUR:

BENKE, Acting P. J.

AARON, J.